**ROBINSON BROG LEINWAND GREENE
  GENOVESE & GLUCK P.C.**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300
A. Mitchell Greene, Esq.
Steven B. Eichel, Esq.

*Attorneys for 60G 542 Broadway Owner, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                              Chapter 11
                                                    Case No. 19-23079 (RDD)

**PRINCE FASHIONS, INC.,**

                                Debtor.
-----------------------------------------------------------X

**60G 542 BROADWAY OWNER, LLC'S MOTION FOR THE ENTRY OF AN
ORDER (I) DISMISSING THE CHAPTER 11 PETITION, OR, IN THE
ALTERNATIVE, (II) FINDING THAT THE AUTOMATIC STAY DOES NOT
PREVENT 60G 542 BROADWAY OWNER, LLC FROM EVICTING DEBTOR, OR,
IN THE ALTERNATIVE, (III) GRANTING RELIEF FROM THE AUTOMATIC
STAY PURSUANT TO 11 U.S.C. §362, AND (IV) FINDING THAT THE
<u>AUTOMATIC STAY DOES NOT EXTEND TO ANY NON-DEBTOR</u>**

        60G 542 Broadway Owner, LLC ("60G"), by and through its undersigned counsel,

submits this motion (the "Motion") seeking an Order: (a) dismissing the chapter 11 petition

of Prince Fashions, Inc. ("Prince" or "Debtor") pursuant to 11 U.S.C. §1112(b) with

prejudice; or, in the alternative, (b) finding that the automatic stay does not prevent 60G from

evicting Prince from the subject premises; or, in the alternative, (c) granting relief from the

automatic stay pursuant to 11 U.S.C. §362(d) so that 60G can proceed with evicting Prince;

and (d) finding that any automatic stay to which Prince is entitled does not extend to any

non-debtor.

1012785-4

# PRELIMINARY STATEMENT

1.      Prince's bad faith bankruptcy filing is a last ditch effort to continue its holdover tenancy as long as possible, thereby depriving 60G of its right to the subject property and, potentially, 60G's ownership interest in the property.  After being heard in multiple New York State Courts and being turned away by each, Prince now seeks to use the automatic stay to further hinder 60G's right to retake possession of the subject premises based on the extensive litigation that has occurred over a three-year period.  The bad faith nature of Prince's filing, as demonstrated by the indisputable facts present here, warrant dismissal of the petition so that 60G can proceed with evicting Prince and regain possession of the premises.

2.      Furthermore, the lease at issue has been conclusively and finally terminated under New York law, notwithstanding Prince's false statements in its Schedules (as defined below) to the contrary.  Prince has exhausted all rights of appeal with respect to this determination and there is no basis for any New York state court to revive the lease.  Accordingly, Prince is not entitled to the protections of the automatic stay with respect to its eviction from the subject premises.

3.      At a minimum, if the Court is unwilling to dismiss Prince's petition at this stage and finds that automatic stay applies to the terminated lease, the underlying facts demonstrate that 60G is entitled to relief from the automatic stay so it can evict Prince pursuant to the warrant of eviction issued by the New York City Civil Court.

4.      If the automatic stay remains in place, 60G will be severely prejudiced.  As demonstrated by publicly filed documents, 60G's lender has obtained a judgment of foreclosure and sale with respect to the premises.  While 60G and its lender had entered into

a temporary forbearance agreement, that agreement has terminated by its terms. If the automatic stay remains in place, 60G will be foreclosed and, despite having prevailed repeatedly on the merits of its claims against Prince in multiple state courts, ultimately lose the property.

5.       Finally, even in the event the Court declines to dismiss Prince's Chapter 11 petition, an Order should issue that any stay still applicable to Prince does not extend to any non-debtor.

6.       This Court should not condone Prince's delay tactics in filing its bad faith chapter 11 petition on the eve of its eviction, nearly three (3) years after its lease was terminated and after losing time and again in multiple state courts. No legitimate purpose is served by Prince's petition and it should be dismissed by this Court.

## RELEVANT BACKGROUND

### Background

7.       The subject premises (the "Premises") are comprised of ground floor commercial space and portions of the basement in a six-story building located at 542 Broadway, New York, New York (the "Building"). 60G is the owner of the Premises pursuant to a recorded Condominium Unit Deed, dated May 11, 2015, from 542 Holding Corp. ("Holding Corp."), a true and accurate copy of which is annexed to the declaration of Bastien Broda ("Broda Decl.") as Exhibit "A."

8.       60G is Prince's former landlord pursuant to a written lease and rider (the "Lease"), dated April 11, 1980, which was then duly assigned to 60G pursuant to that certain Assignment and Assumption of Retail Master Lease, dated May 2015, which was executed concomitant with 60G's acquisition of the Premises. True and accurate copies of the Lease

and the Assignment and Assumption of Retail Master Lease are annexed to the Broda Decl. as Exhibits "B" and "C," respectively. The Lease was adjudged terminated by an Order of the Appellate Term, First Department, dated October 29, 2018 (the "Appellate Term Order"), a true and accurate copy of which is annexed to the Broda Decl. as Exhibit "D." A judgment of possession was entered on November 19, 2018 by the New York City Civil Court (the "Judgment of Possession") and a warrant of eviction against Prince (the "Warrant of Eviction") was issued on December 10, 2018. True and accurate copies of the Judgment of Possession and proof of issuance of the Warrant of Eviction are annexed to the Broda Decl. hereto as Exhibits "E" and "F," respectively.

9.      60G executed a Senior Loan Mortgage encumbering the Premises in favor of 542 Broadway Lender LLC ("Lender") on May 13, 2015, which was recorded in the publicly available records of the City Register on June 1, 2015. Thereafter, additional mortgages on the Premises were recorded on June 18, 2015.

10.     The Premises is divided into two separate retail stores, the North Store and the South Store. The North Store is currently vacant and was occupied by Foravi.com, Inc. ("Foravi") until it vacated the Premises in or around November 2018.[1] Prince is subleasing the South Store to OMG/The Jeans Store ("OMG") and OMG is currently in possession thereof.

**60G's Termination of the Lease and the Holdover Proceeding**

11.     On March 4, 2016, as a result of Prince's failure to maintain general liability insurance in favor of the landlord, in addition to other breaches of the Lease, and pursuant to

---

[1] M K Sportswear, Inc. ("MK"), which owns fifty percent (50%) of Prince, claims that it has the right to control the North Store, despite the absence of any sublease from Prince to MK. MK's claim is currently the subject of a motion in New York City Civil Court, which is *sub judice*.

1012785-4

Article 17 of the Lease (the default provision), 60G served a Notice of Default to Prince in

which 60G declared Prince in default under the Lease.  A true and accurate copy of the

Notice of Default is annexed to the Broda Decl. as Exhibit "G."  Included among the

multiple defaults was Prince's failure to maintain general liability insurance. Ex. "G," p. 4.

12.    On July 1, 2016, pursuant to Article 17 of the Lease, 60G served a Notice of

Lease Cancellation on Prince, a true and accurate copy of which is annexed to the Broda

Decl. as Exhibit "H."  Pursuant thereto, the Lease was terminated effective July 5, 2016.

13.    On July 11, 2016, 60G commenced a holdover proceeding in New York City

Civil Court by filing of a Notice of Petition and Petition seeking a Final Judgment of

Possession and Warrant of Eviction based on Prince's incurable Lease default.  True and

accurate copies of the Notice of Petition and Petition (collectively, the "Petition") are

annexed collectively to the Broda Decl. as Exhibit "I."  On July 22, 2016, Prince filed and

served its Answer to the Petition, which included nine defenses, and is attached to the Broda

Decl. as Exhibit "J."  OMG and Foravi were also named as respondents in the Petition and

both failed to timely appear.

14.    60G then moved the Civil Court on August 5, 2016 for summary judgment

seeking a final judgment of possession and other related relief.  60G's initial moving papers

consisted of its Memorandum of Law in Support of Summary Judgment, dated August 5,

2016, the Affirmation of Joseph Barbiere in Support of Motion for Summary Judgment,

dated August 5, 2016, the Affidavit of Kevin Chisolm in Support, sworn to August 5, 2016,

and the Affidavit of Elizabeth Monrose, sworn to on August 4, 2016 (collectively, the

"Summary Judgment Motion").  A true and accurate copy of the Summary Judgment Motion

is annexed to the Broda Decl. as Exhibit "K."

1012785-4

15.     At the request of Prince, the hearing on the Summary Judgment Motion was adjourned several times, resulting in substantial delay.  On September 9, 2016, Prince ultimately opposed 60G's motion for summary judgment and cross-moved to dismiss the Petition, a copy of which is annexed to the Broda Decl. as Exhibit "L."

16.     On October 5, 2016, with the matter having been marked "final" in response to Prince's repeated adjournment requests, counsel for the parties appeared before Judge Erika M. Edwards of the Civil Court for argument on the Summary Judgment Motion.  At that time, counsel for Prince requested yet another adjournment, which the Court denied. The Court heard arguments on both the Summary Judgment Motion and Prince's cross-motion and indicated that the matter was fully submitted and that a decision would be issued promptly.

17.     On January 13, 2017, Lender commenced an action against 60G in New York County Supreme Court seeking to foreclose on the mortgages on the Premises given by 60G (the "Foreclosure Action").  60G's default under those mortgages was a result of Prince's refusal to vacate the Premises after the termination of the Lease.  A true and accurate copy of the complaint in the Foreclosure Action, without exhibits, is annexed to the Broda Decl. as Exhibit "M."

**Summary Judgment and Renewal in the Holdover Proceeding**

18.     By a Decision/Order, dated September 20, 2017, Judge Samuels granted 60G's motion for final judgment of possession and striking Prince's affirmative defenses, and

denied Prince's cross-motion to dismiss the Petition (the "Summary Judgment Order"), a true and accurate copy of which is annexed to the Broda Decl. as Exhibit "N."[2]

19.     Prince subsequently moved to renew and reargue the Summary Judgment Order on various bases, including purported new evidence of a so-called conspiracy to deprive it of its leasehold interest.  After briefing, oral argument, and supplemental submissions directed by the Court, Judge Samuels, by a Decision/Order, dated February 9, 2018, granted Prince's motion in part (the "Renewal Order"), a true and accurate copy of which is annexed to the Broda Decl. as Exhibit "O."  In doing so, Judge Samuels reversed her prior award of summary judgment in 60G's favor and reinstated Prince's first, fifth, seventh, and ninth affirmative defenses.

**The Appellate Term's Reversal of the Renewal Order**

20.     60G immediately appealed the Renewal Order to the Appellate Term, First Department, perfecting its appeal in time for the next term of that Court after the Renewal Order was issued.

21.     On August 20, 2018, Lender obtained a judgment of foreclosure and sale with respect to the Premises (the "Foreclosure Judgment"), a true and accurate copy of which is annexed to the Broda Decl. as Exhibit "P."

22.     The Appellate Term reversed the Renewal Order via the issuance of its Appellate Term Order.  The Appellate Term Order confirmed the termination of the Lease and 60G's right to regain possession of the Premises.  Pursuant to the terms of the Appellate

---

[2] The Summary Judgment Order also ordered inquests against OMG and Foravi based on their failure to appear in the holdover proceeding.  The default against Foravi was later vacated on a motion by Foravi.  Foravi ultimately agreed to vacate the Premises and stipulated to the entry of a judgment of possession against it as of November 1, 2018.

Term Order, 60G was entitled to the entry of a judgment of possession against Prince and the issuance of a warrant of eviction, with execution thereon stayed for 60 days following service of a notice of entry of the Appellate Term Order, which 60G served on November 7, 2018.

23.    The Judgment of Possession was entered by the New York City Civil Court on November 19, 2018. See Ex. "E." On November 29, 2018, OMG stipulated to the entry of a judgment of possession against it in light of the Appellate Term Order. The Civil Court then issued warrants of eviction with respect to the Premises against Prince and Foravi on December 10, 2018. See Ex. "F." The Civil Court issued a warrant of eviction against OMG, proof of which is annexed to the Broda Decl. as Exhibit "Q." The stay of eviction set forth in the Appellate Term Order expired by its terms on January 11, 2019.

24.    After being served with Notice of Entry of the Appellate Term Order, Prince moved in that Court for leave to reargue, leave to appeal to the Appellate Division and a stay pending such appeal. By order dated December 21, 2018, the Appellate Term denied Prince's motion to reargue and for leave to appeal to the Appellate Division.

25.    On January 10, 2019, Prince moved in the Appellate Division for leave to appeal the Appellate Term Order and for a stay pending the determination of that motion, and the Appellate Division issued an Order, dated January 10, 2019, (the "Stay Order") staying enforcement of the Appellate Term Order while Prince's motion was pending. A true and accurate copy of the Stay Order is attached to the Broda Decl. as Exhibit "R".

26.    On February 3, 2019, the Court in the Foreclosure Action granted Lender's motion to extend the time to hold the foreclosure sale for the Premises until July 28, 2019. A true and accurate copy of the Court's Order to that effect is annexed to the Broda Decl. as

{01012785.DOCX;5 }8

Exhibit "S." Lender made this motion in connection with a temporary forbearance agreement between it and 60G which has now expired by its terms.

27.       By a Decision and Order, dated May 14, 2019, the Appellate Division denied Prince's motion for leave to appeal and vacated the Stay Order (the "Final Order"). A true and correct copy of the Final Order is attached to the Broda Decl. as Exhibit "T" . 60G served and filed a Notice of Entry of the Final Order on May 16, 2019 and again on May 23, 2019. Accordingly, the stay of eviction in place as a result of the Stay Order expired no later than May 29, 2019 pursuant to CPLR §5519(e)(ii).

28.       On May 29, 2019, Prince filed its *pro se* Chapter 11 petition and Schedules of Assets and Liabilities (the "Schedules") in this Court. On June 5, 2019, Prince filed an amended Schedule G. Prince's Schedule G asserts that Prince has an unexpired Lease for the Premises. As set forth in greater detail above, this statement is demonstrably false in light of the Appellate Term Order and the Final Order.

29.       During an appearance in the New York County Supreme Court on June 13, 2019, in a related action, Prince and MK both argued that the automatic stay should also apply to MK, despite the fact that it is not a debtor in this or any other bankruptcy proceeding.

## ARGUMENT

I.       **PRINCE'S CHAPTER 11 PETITION WAS FILED IN BAD FAITH AND SHOULD BE DISMISSED PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE.**

30.       Prince's Chapter 11 petition is nothing more than a classic bad faith filing, designed solely to derail 60G from exercising its state law rights and remedies including,

1012785-4

19-23079-rdd    Doc 6    Filed 06/28/19    Entered 06/28/19 10:36:10    Main Document
Pg 10 of 24

without limitation, to evict Prince from the Premises.  Because Prince filed its petition in bad

faith, the petition should be dismissed pursuant to 11 U.S.C. §1112(b)(1).

31.    Section 1112(b)(1) of the Bankruptcy Code provides:

> Except as provided in paragraph (2) and subsection (c), on
> request of a party in interest, and after notice and a hearing, the
> court shall . . . dismiss a case under this chapter . . . for cause
> unless the court determines that the appointment under section
> 1104(a) of a trustee or an examiner is in the best interests of
> creditors and the estate.

11 U.S.C. §1112(b)(1).

32.    "Cause" is defined in Section 1112(b)(4), which provides that "the term

'cause' includes" sixteen examples of acts or defaults by a debtor that would constitute cause

to dismiss a chapter 11 petition.  "It is important to note that this list is illustrative, not

exhaustive."  C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d

1304, 1310 (2d Cir. 1997).  Indeed, "[t]he court will be able to consider other factors as they

arise, and to use its equitable powers to reach an appropriate result in individual cases."

Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC, 476 B.R. 60, 66 (E.D.N.Y. 2012)

(quoting Casse v. Key Bank. Nat'l Ass'n (In re Casse), 198 F.3d 327, 334 (2d Cir. 1999)).  In

that regard, "[a] bankruptcy court has discretion to determine what additional circumstances,

not enumerated in the statute, may constitute cause."  Id. at 67; see also In re 347 Linden

LLC, Case Nos.11-CV-1990(KAM), 11-CV-2201(KAM), 11-CV-2202(KAM), 2011 WL

2971496, at *4 (E.D.N.Y. July 20, 2011) ("The bankruptcy court may dismiss a Chapter 11

[petition] for any reason cognizable to the equity power and conscience of the court as

constituting an abuse of the bankruptcy reorganization process") (internal marks omitted)

(alteration in the original).

{01012785.DOCX;5 }10

1012785-4

33.     Although not specifically enumerated in Section 1112(b), multiple courts, including the Second Circuit Court of Appeals, have recognized that a debtor's "bad faith" in filing a chapter 11 case is sufficient "cause" for dismissing a case pursuant to Section 1112(b).  See In re C-TC, 113 F.3d at 1310; Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068, 1071 (5th Cir. 1986) ("Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings") (citing In re Victory Constr. Co., 9 B.R. 549, 551–60 (Bankr. C.D. Cal. 1981)).  In other words, good faith is a requirement for the filing of a Chapter 11 petition, which has as its ultimate objective a debtor's successful rehabilitation.  As such, "it is beyond cavil" that a Chapter 11 petition may be dismissed "for lack of good faith" pursuant to Section 1112(b). Clear Blue Water, LLC, 476 B.R. at 67.

34.     Although a moving party typically carries the burden of demonstrating that sufficient cause exists to dismiss a petition, when "the issue is whether the bankruptcy petition was filed in good faith, the burden shifts to the debtor to demonstrate that the petition was filed in good faith."  Clear Blue Water, LLC, 476 B.R. at 68-69 (citing In re Syndicom Corp., 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001) (stating that "once the good faith of a debtor is called into question, the burden shifts to the debtor to demonstrate that the petition was filed in good faith")).

35.     In the Second Circuit, a petition is filed in bad faith "if it is clear that, on the filing date, there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings."  In re Reyes, Case No. 14-13233(SMB), 2015 WL 4624156, at *4 (Bankr. S.D.N.Y. Aug. 4, 2015)

(citing Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.), 931 F.2d

222, 227 (2d Cir. 1991)); see also In re Kingston Square Assocs., 214 B.R. 713, 725 (Bankr.

S.D.N.Y. 1997) ("The standard in this Circuit is that a bankruptcy petition will be dismissed

if both objective futility of the reorganization process and subjective bad faith in filing the

petition are found") (emphasis omitted).

36.     The first prong of the Cohoes standard sets forth the so-called subjective bad

faith test while the second prong is known as the objective futility test.  Notably, although the

Second Circuit's decision in Cohoes requires a two-part showing to dismiss a petition as

being filed in bad faith, "a debtor's behavior can be so egregious—especially in a two-party

case or a case in which the other parties in interest do not oppose the creditor's requested

relief—that there may be no need to look into the possibility of a debtor's equity in the

collateral or the reasonable likelihood of the debtor confirming a Chapter 11 plan in a

reasonable time." In re 68 W. 127 St., LLC, 285 B.R. 838, 847 (Bankr. S.D.N.Y. 2002)

(citing Briarpatch Film Corp., 281 B.R. 820, 834 (Bankr. S.D.N.Y. 2002) and In re Eclair

Bakery Ltd., 255 B.R. 121, 137-40 (Bankr. S.D.N.Y. 2000)).  Although the lack of an honest

intention to reorganize should obviate the Court's consideration of any objective factors here,

as discussed below, objective futility exists in this case in any event, thereby warranting

dismissal on grounds the petition was filed in bad faith.

### a.  Prince's Petition Was Filed in Subjective Bad Faith

37.     In the Second Circuit, courts look to the following non-exhaustive factors (the

"C-TC Factors") to determine whether a debtor has acted in subjective bad faith (the first

prong of the Cohoes standard):

    (1)     [whether] the debtor has only one asset;

(2)     [whether] the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3)     [whether] the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4)     [whether] the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in [a separate action];

(5)     the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6)     the debtor has little or no cash flow;

(7)     the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8)     the debtor has no employees.

In re C-TC 9th Ave. P'ship, 113 F.3d at 1311; see also In re Consol. Distribs., Inc., 2013 WL 3929851, at *7 (listing and applying the C-TC Factors); In re Murray, 543 B.R. 484, 491 (Bankr. S.D.N.Y. 2016) (acknowledging the C-TC Factors as indicia of a bad faith filing "principally in voluntary cases commenced to block foreclosure and other actions against property") (emphasis added); In re Project Orange Assocs., LLC, 432 B.R. 89, 113 (Bankr. S.D.N.Y. 2010) (listing and applying the C-TC Factors).

38.     Consideration of the C-TC Factors in this case makes clear that Prince's chapter 11 petition was filed in subjective bad faith.  Specifically:

(a)     **Factor 1:**     Prince has only one purported asset.  Aside from $3,413.87 in cash and $3,000.00 in office equipment, the only other asset listed in Prince's Schedules is its purported interest in the now conclusively terminated Lease, which Prince values at $15,000,000.00.

(b)   **Factor 2:**   Prince lists no secured creditors and only four (4) unsecured creditors, all of which are Prince's attorneys and accountants.  Prince did not list 60G as a creditor despite the fact that 60G has a substantial claim against Prince for attorneys' fees and use and occupancy that was scheduled for a hearing in Civil Court on June 24, 2019, and adjourned by that Court as a result of Prince's bankruptcy filing.

(c)   **Factors 3, 4, and 5:**  Prince was days away from being evicted from the Premises when it filed its Petition to avail itself of the automatic stay and hinder 60G's enforcement of its rights.  Despite the unpaid attorneys' and accountants' fees, this is nothing more than a two party dispute between 60G and Prince with respect to the Premises. Prince's sole business is subletting the Premises.  The termination of the Lease effectively brings that business to a close and there is nothing for Prince to reorganize through bankruptcy.  Furthermore, the timing of Prince's filing on May 29, 2019, one day after the New York City Civil Court declined to impose any further stay of eviction is further proof of Prince's intent to delay and frustrate 60G's efforts to regain the Premises.

(d)   **Factor 6:**   Prince has minimal cash flow as demonstrated by its Schedules which list gross revenue of $75,000.00, or $15,000.00 per month, for the first five months of 2019.

(e)   **Factor 7:**   Prince clearly cannot meet its current expenses when its monthly cash flow of $15,000.00 is compared to the approximately $860,000.00 it currently owes its professionals.

(f)   **Factor 8:**   Upon information and belief, Prince has no employees.

39.   The existence of all of the <u>C-TC</u> Factors confirms Prince instituted this Chapter 11 proceeding in bad faith, solely to abuse the judicial process, and to frustrate

60G's rights pursuant to the ruling of the Appellate Term, First Department and the duly issued warrant of eviction. Indeed, where, as here, a Chapter 11 case is "essentially a two-party civil lawsuit involving non-bankruptcy law brought in the bankruptcy court in the guise of being a reorganization of some sort under Chapter 11," the case should be dismissed as being filed in subjective bad faith. In re HBA E., Inc., 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988). Indeed, "Chapter 11 was never intended to be used as a fist in a two party bout." Id.

40.    Based on Prince's subjective bad faith, its Chapter 11 petition should be dismissed with prejudice.

### b. Prince's Petition Is Objectively Futile

41.    A petition is objectively futile if, "at the time of filing there [is] no reasonable probability" that the debtor will "eventually emerge from bankruptcy proceedings." Squires Motel, LLC v. Gance, 426 B.R. 29, 34 (N.D.N.Y. 2010) (internal marks omitted) (alteration in the original) (citing Cohoes Indus. Terminal, 931 F.2d at 227) (citing, inter alia, Carolin Corp. v. Miller, 886 F.2d 693, 698–702 (4th Cir. 1989)); In re Consol. Distribs., Inc., 2013 WL 3929851, at *7; In re Loco Realty Corp., Case No. 09-11785(AJG), 2009 WL 2883050, at *6 (Bankr. S.D.N.Y. June 25, 2009) ("A debtor who has no realistic chance of successfully emerging from bankruptcy should no longer be in Chapter 11").

42.    Prince has no reasonable probability to confirm a plan as it will be unable to assume its terminated Lease. Pursuant to section 365 of the Bankruptcy Code, a debtor is permitted to "assume or reject any executory contract or unexpired lease...." 11 U.S.C. §365. Whether a lease has expired and therefore is incapable of being assumed is determined by reference to applicable state law. See Butner v. United States, 440 U.S. 48, 55 (1979) (noting that, in bankruptcy context, "[p]roperty interests are created and defined by state law");

Robinson v. Chi. Hous. Auth., 54 F.3d 316, 317-20 (7th Cir. 1995) (noting that "it is well

established that courts look to state law to determine what constitutes an 'unexpired' lease");

In re Policy Realty Corp., 242 B.R. 121, 128 (S.D.N.Y. 1999) ("The Bankruptcy Code

directs that the question of 'termination' is to be resolved by reference to 'applicable

nonbankruptcy law.' In this context, 'applicable nonbankruptcy law' is state law.") (citing 11

U.S.C. §365); In re Éclair Bakery Ltd., 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000)

("Congress has generally left the determination of property rights in the assets of a

bankruptcy estate to state law."); In re Clark, 47 B.R. 88, 89 (Bankr. Vt. 1985) (noting that,

in bankruptcy context, "[i]t is axiomatic that property rights arise under state law.")

43.    The Appellate Term Order, which is now a final order from which no further

appeals lie, determined that the Lease was properly terminated as a result of Prince's

incurable insurance default.  Notwithstanding the fact that Prince filed this meritless

bankruptcy prior to the execution of the Warrant of Eviction, there is no basis under New

York state law to revive its leasehold interest. See Super Nova 330 LLC v Gazes, 693 F3d

138, 143 (2d Cir 2012) (holding that in order for a lease to be considered unexpired, and

therefore capable of assumption, the tenant must have the power to revive the same under

applicable state law).  Accordingly, the Lease cannot be assumed under 11 U.S.C. §365.

44.    In addition, "a lease may be terminated under New York State law by

operation of a conditional limitation.  In this manner, the landlord sends the tenant in default

a Notice of Termination of Lease, stating that the lease will be deemed terminated upon a

specified date due to tenant's default.  The lease is thus terminated upon the mere lapse of

time, rather than on any further act by the landlord." In re Musikahn Corp., 57 B.R. 938, 940

(Bankr. E.D.N.Y. 1986) (citations omitted).  The presence, as is the case here, of a

conditional limitation is paramount, as it mandates that the debtor maintains, at best, a

possessory interest in the Premises.  As 60G merely notified Prince of the occurrence of the

conditional limitation, Prince's leasehold interest was terminated pre-petition.

45.    The relevant provision of the Lease, Paragraph 17, provides in pertinent part as

follows:

> If Tenant defaults in fulfilling any of the covenants of this lease
> …upon Landlord serving a written five (5) days' notice upon
> Tenant specifying such default and upon expiration of said five
> (5) days, if Tenant shall have failed to comply with or remedy
> such default … then Landlord may serve a written three (3)
> days' notice of cancellation of this Lease upon Tenant, and upon
> the expiration of said three (3) days, this lease and the term
> thereunder shall end and expire as fully and completely as if the
> expiration of such three (3) day period were the day herein
> definitely fixed for the end and expiration of this lease and the
> term thereof.

See Ex "B," ¶ 17; Lexington Ave. & 42nd St. Corp. v 380 Lexchamp Operating, Inc., 205

AD2d 421, 423 (1st Dept 1994) (lease provision that called for automatic termination was a

conditional limitation); NL Indus., Inc. v PaineWebber Inc., 720 F Supp 293, 298 (S.D.N.Y.

1989) ("A conditional limitation allows a lessor to notify the tenant that an uncured default

has caused the lease to end automatically—in this case after an agreed-upon number of

days").

46.    As the default provision of the Lease is a conditional limitation, the Lease and

Prince's tenancy automatically terminated on July 5, 2016, the date specified in the Notice of

Termination, not the date of the issuance of the warrant of eviction against Prince. Lexington

Ave. & 42nd St. Corp., 205 AD2d at 423 (service of notice in accordance with conditional

limitation of lease eradicated tenant's interest in the leasehold).

47.    Even if this Court were to find that the default provision is not a conditional limitation, the issuance of a warrant of eviction terminates an existing lease between the parties and annuls the relationship of landlord-tenant under New York law. See RPAPL §749(3), In re Sanshoe Worldwide Corp., 139 B.R. 585, 594 (S.D.N.Y. 1992), aff'd 993 F.2d 300 (2d Cir. 1993); Radol v. Centeno, 165 Misc2d. 448 (N.Y.Civil Ct. 1995). The filing of a voluntary Chapter 11 petition does not resurrect a lease, nor does the bankruptcy court have the power to resurrect a lease that was terminated prepetition. See e.g., Bell v. Alden Owners. Inc., 199 B.R. 451, 458 (S.D.N.Y. 1996). Further, a state court judgment that was issued prior to the commencement of a bankruptcy case is res judicata in that bankruptcy case and the debtor may not relitigate issues already decided by the state court. Id. at 458; In re Lady Liberty Tavern Corp, 94 B.R. 812. 814 (S.D.N.Y. 1988) (a bankruptcy court judge should give preclusive effect to a judgment issued by a landlord-tenant court, which terminated a lease prepetition.); see also Smith v. New York City Housing Authority,  No. 12-CV-06375 (CBA), 2012 WL 6731703 at *2 (E.D.N.Y. Dec 28, 2012) ("Even if the Court had subject matter jurisdiction over landlord-tenant matters, the Rooker-Feldman doctrine would prevent this Court from asserting jurisdiction because [plaintiff] seeks review of a state court judgment rendered before these federal proceedings commenced").

48.    As set forth above, the Lease terminated pre-petition as set forth in the Appellate Term Order and the issuance of the warrant of eviction.  Thus, Prince has no ability to assume the Lease or confirm a plan that contemplates a go-forward business with the Lease in place.  Indeed, "a debtor remaining in possession of real property that is the subject of a prepetition warrant of eviction has merely a naked possessory interest which is wrongful, of minimal value to the estate and may not serve as the basis of a reorganization

effort." In re Island Helicopters, Inc., 211 B.R. 453, 463 (Bankr. E.D.N.Y. 1997). The Court

should not allow Prince to abuse the bankruptcy process to the detriment of 60G's rights

under the rulings of multiple New York State courts.

49.     In light of the foregoing, Prince's Chapter 11 petition is objectively futile and

should be dismissed.

### c. The Court Must Dismiss the Chapter 11 Petition

50.     Because the petition was filed in subjective bad faith and is objectively futile,

it must be dismissed unless the Court:

> ...finds and specifically identifies **unusual circumstances**
> establishing that . . . dismissing the case is not in the best
> interests of creditors and the estate, **and** the debtor or any other
> party in interest establishes that-- (A) there is a reasonable
> likelihood that a plan will be [timely confirmed]; and (B) the
> grounds for . . . dismissing the case include an act or omission
> of the debtor other than under paragraph (4)(A)—(i) for which
> there exists reasonable justification for the act or omission; and
> (ii) that will be cured within a reasonable period of time fixed
> by the court.

11 U.S.C. §1112(b)(2) (emphasis added).

51.     No unusual circumstances exist in this case. There are no real creditors or

employees to protect. Instead, Prince exhausted its state court options and came to

bankruptcy court in a futile attempt to preserve its terminated leasehold interest, and for no

other reason. Regardless, as demonstrated herein, there is no prospect of confirming a plan

for Prince as its sole purported asset, the Lease, is not an asset of the estate at all based on its

termination. 60G should not have to wait any longer to regain possession of the Premises.

Because Prince's petition is both objectively futile and was filed in subjective bad faith, the

Court **must** dismiss Debtor's Chapter 11 petition pursuant to 11 U.S.C. §1112(b) with

prejudice.

## II.     THE AUTOMATIC STAY DOES NOT APPLY TO AN EVICTION WHERE NO LEASE IS IN FORCE

52.     Even if the Petition is not dismissed, it is elementary that the automatic stay

arising from a Chapter 11 petition has no effect on an eviction of the debtor from commercial

property where the debtor has no lease. See In re Cohoes Indus. Terminal, Inc., 62 B.R. 369,

377 (Bankr. S.D.N.Y. 1986 ), aff'd, 831 F.2d 283 (2d Cir. 1987) (citing Matter of Triangle

Laboratories, Inc., 663 F.2d 463 (3d Cir. 1981)).

53.     Specifically, Section 362(b)(10) of the Bankruptcy Code provides that the

filing of a bankruptcy petition does not operate as a stay:

> under subsection (a) of this section, of any act by a lessor to the
> debtor under a lease of nonresidential real property that has
> terminated by the expiration of the stated term of the lease
> before the commencement of or during a case under this title to
> obtain possession of such property.

11 U.S.C. §362(b)(10).

54.     The Premises here are nonresidential, and any right that Prince may have had

to occupy them was terminated pre-petition as set forth in the Appellate Term Order and

further under New York law with the issuance of the Warrant of Eviction.  Since Prince has

no lease, the automatic stay does not apply in this case, and 60G should be permitted to

proceed with its eviction of Prince pursuant to the Appellate Term Order and the warrant that

was issued on December 10, 2019, months prior to Prince's May 29, 2019 bankruptcy filing.

See In re Neville, 118 B.R. 14 (E.D.N.Y. 1990) ("The language of Section 362(b)(10) clearly

indicates that it is not necessary for a landlord to move in the Bankruptcy Court to vacate the

automatic stay when the Debtor is operating under a lease of non-residential real property
that has terminated by the expiration of the stated term of the lease before the
commencement of or during a case under this title. The landlord may do whatever is
necessary and appropriate under state law to obtain possession of such property"); In re
Cohoes Indus. Terminal Inc., 62 B.R. 369, 376 (Bankr. S.D.N.Y. 1986) ("It is settled law that
an unexpired lease that was terminated before the filing of a bankruptcy petition is not
property of the estate within the meaning of 11 U.S.C. §541 and is neither affected by the
automatic stay under 11 U.S.C. §362(a) nor may it be assumed by the debtor under 11 U.S.C.
§365 .... Accordingly, the automatic stay does not operate to enjoin Associates from
enforcing any rights which it may claim with respect to the property covered by the
terminated lease"); In re Scarsdale Tires Inc., 47 B.R. 478 (S.D.N.Y. 1985) ("It is settled law
that a lease or license that was terminated before the filing of a bankruptcy petition is neither
affected by the automatic stay under 11 U.S.C. §362(a) nor may it be assumed by the debtor
under 11 U.S.C. §365"); In re GSVC Restaurant Corp., 10 B.R. 300 (S.D.N.Y. 1980)
(upholding eviction after termination of lease and issuance of a warrant of eviction); Nadine
Properties, Inc. v. Heny Bergmann & Co., Inc., 153 Misc.2d 695, 701, 583 N.Y.S.2d 114,
119 (N.Y.Civil Ct. 1991) ("Accordingly, under Section 362(b) of the Bankruptcy Code ...
petitioner was exempt from the automatic stay and could exercise its statutory right to
recover possession of its property by executing on the warrant. It follows, obviously, that
petitioner was not required to move in Bankruptcy Court to vacate a stay that did not apply").

55.     Because the automatic stay clearly does not apply here, 60G is entitled to an
Order to that effect so that the eviction can proceed without further delay.

## III.   IN THE EVENT THIS COURT IS DISINCLINED TO DISMISS PRINCE'S PETITION, THE COURT SHOULD VACATE THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362(d)(1)

56.    Even if the Court declines to dismiss Prince's petition and finds that the automatic stay applies, there is ample cause to grant 60G relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1), so 60G can exercise its state law rights and remedies including, without limitation, evicting Prince from the Premises.

57.    Pursuant to Section 362(a)(1), all actions against a debtor are automatically stayed upon the filing of a bankruptcy petition.  Although the stay is automatic, "restraining creditors from enforcing their legitimate legal rights is strong medicine and our bankruptcy laws do not sanction the stay for [the] stay's sake."  In re RYYZ, LLC, 490 B.R. 29, 33 (Bankr. E.D.N.Y. 2013).  Section 362 permits a court to lift the stay and allow a pre-petition action to continue against a debtor upon a showing of "cause."  It provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay—(1) for cause….

11 U.S.C. §362(d).

58.    "Cause" is not defined under Section 362 of the Bankruptcy Code; however, courts have found that the factors that constitute "cause" to dismiss a case apply equally to a request that the automatic stay be lifted or modified. See In re 234-6 W. 22nd St. Corp., 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) ("the standards for bad faith as evidence of cause," whether in the context of dismissal or relief from the stay, "are not substantively different from each other") (citing In re Laguna Assocs., L.P. v. Aetna Cas. & Sur. Co. (Laguna Assocs., L.P.), 30 F.3d 734, 737 (6th Cir. 1994)); see also In re Project Orange Assocs.,

LLC, 432 B.R. at 104 (citing In re Eclair Bakery, Ltd., 255 B.R. at 138). Thus, the decision to lift the automatic stay under Section 362(d)(1) is within the Court's sound discretion. In re Syndicom Corp., 268 B.R. at 43 (citing Sonnax Indus, Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus, Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990)).

59.    "The burden of proof on a motion to lift . . . the automatic stay is a shifting one." Sonnax Indus, 907 F.2d at 1285. A party moving to lift the stay under Section 362(d)(1) "must initially produce evidence establishing 'cause' for the relief he requests." In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). Once the moving party establishes a *prima facie* case for "cause," the burden shifts to the debtor to disprove its existence. Burger Boys, Inc. v. S. St. Seaport L.P. (In re Burger Boys, Inc.), 183 B.R. 682, 687 (S.D.N.Y. 1994) (citing 11 U.S.C. §362(g)(1)).

60.    In this case, cause exists to vacate the automatic stay because, as established above, Prince filed its chapter 11 petition in bad faith. Indeed, all the C-TC Factors, which are indicative of a bad faith bankruptcy filing, are present here. Those bad faith factors alone constitute sufficient cause to lift the automatic stay pursuant to Section 362(d) of the Bankruptcy Code. See 234-6 W. 22nd St. Corp., 214 B.R. at 757 (finding the same factors which constitute "cause" to dismiss a case apply equally to the showing necessary for the automatic stay to be lifted). Accordingly, if the Court is not inclined to dismiss the petition outright, it should nevertheless vacate the automatic stay pursuant to 11 U.S.C. §362(d)(1) and allow 60G to proceed with evicting Prince from the Premises in the ordinary course.

61.    Finally, and at a minimum, this Court should issue an Order declaring that any automatic stay that remains in place for the benefit of Prince has no effect on any other individuals or entities that claim a right to the Premises through Prince, including, but not

{01012785.DOCX;5 }23

limited to, MK and OMG. In fact, OMG, as sublessee, and MK, who does not even have a

sublease, have no right to stay on the Premises because the Lease has been terminated and is

no longer in effect.  See In re Child World, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) ("When

a prime lease fails, so does the sublease").

## CONCLUSION

**WHEREFORE,** 60G respectfully requests that the Court enter an Order (a)

dismissing the Chapter 11 petition of Prince pursuant to 11 U.S.C. §1112(b) with prejudice;

or, in the alternative, (b) finding that the automatic stay does not prevent 60G from evicting

Prince from the subject premises; or, in the alternative, (c) granting relief from the automatic

stay pursuant to 11 U.S.C. §362(d) so that 60G can proceeding with evicting Prince, and (d)

finding that the automatic stay does not apply to any non-Debtor.

**DATED:**    New York, New York
June 28, 2019

          **ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300
*Attorneys for 60G 542 Broadway Owner, LLC*

          By:/s/ Steven B. Eichel
             **A. Mitchell Greene
             Steven B. Eichel**