**ROSEN & ASSOCIATES, P.C.**
*Proposed Counsel to the Debtor and*
 *Debtor in Possession*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE FASHIONS, INC.,<br><br>         Debtor. | Chapter 11<br><br>Case No. 19-23079-rdd |

**DEBTOR'S RESPONSE IN OPPOSITION TO MOTION OF 60G 542 BROADWAY OWNER, LLC FOR THE ENTRY OF AN ORDER (I) DISMISSING THE CHAPTER 11 PETITION, OR, IN THE ALTERNATIVE, (II) FINDING THAT THE AUTOMATIC STAY DOES NOT PREVENT 60G 542 BROADWAY OWNER, LLC FROM EVICTING DEBTOR, OR, IN THE ALTERNATIVE, (III) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. §362, AND (IV) FINDING THAT THE <u>AUTOMATIC STAY DOES NOT EXTEND TO ANY NON-DEBTOR</u>**

Prince Fashions, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), through its proposed counsel, Rosen & Associates, P.C., as and for its response (the "**Response**") in opposition to 60G 542 Broadway Owner, LLC's ("**60G**") *Motion for the Entry of an Order (I) Dismissing the Chapter 11 Petition, or, in the Alternative, (ii) Finding That the Automatic Stay Does Not Prevent 60G 542 Broadway Owner, LLC, From Evicting Debtor, or, in the Alternative, (III) Granting Relief From the Automatic Stay Pursuant to 11 U.S.C. §362, and (IV) Finding That the Automatic Stay Does Not Extend to Any Non-Debtor* (the "**Motion**") [Doc. No. 6]. In support of this Response, the Debtor submits the accompanying affidavit of Bruce H.

Wiener (the "**Wiener Affidavit**"), a partner of Warshaw Burstein, LLP and counsel to the Debtor in the prior state court proceedings, which is fully-incorporated by reference herein.

## PRELIMINARY STATEMENT

1. In moving to dismiss this case, 60G unfairly raises the banner of bad faith while ignoring its own wrongdoing that precipitated the Debtor's need for bankruptcy relief in the first place; conveniently divorcing itself from its unlawful and improvident practices behind the alleged "insurance default" and sham mortgage foreclosure, pursued as part of a joint effort with its predecessor in interest and lender to deprive the Debtor of its valuable long-term leasehold interest.

2. Against this backdrop, 60G's claims that the Debtor's bankruptcy filing was made in bad faith belie its guileful goal: to reap a windfall by recapturing a lease worth millions at the expense and detriment of the Debtor and it's estate.

3. As demonstrated below, this case was filed in the utmost good faith and for the proper and legitimate purpose of preserving the Debtor's 99-year leasehold—which is tantamount to an interest in real property under New York law[1]— consistent with fundamental bankruptcy principles for the benefit of all creditors and other parties in interest. In addition, bankruptcy not only offers the Debtor the most efficient forum to rehabilitate its business and reorganize its financial affairs, but also allows the Debtor to preserve its leasehold without the risk of losing it during the process.

---

[1] Under New York law, long-term leases—like the 99-year lease here—are often considered equivalent to the sale of an interest in real property. *See, e.g*, N.Y. TAX LAW §1401(e) (McKinney 2008) (providing that a "[t]ransfer of an interest in real property" includes leases for a period exceeding forty-nine years); *Glasser v. Herman*, 231 N.Y.S.2d 232, 234 (Sup. Ct. 1962) ("By virtue of its 99-year lease . . . respondent corporation acquired virtually all of the attributes of ownership of the land and also of the building.")

4. Indeed, preserving the value of the bankruptcy estate is the one of the fundamental tenets of corporate insolvency law: "[t]he purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for the stockholders." *In re HBA East,* 87 B.R. 248, 249 (Bankr. E.D.N Y 1988) *quoting* H.R. Rep. No. 595, 95th Cong., 1st Sess. 220-21 (1977).

## FACTUAL AND PROCEDURAL BACKGROUND

5. Since 1980, the Debtor, as tenant, has been operating a parcel of commercial real estate located at 542 Broadway, New York, New York 10012 (the "**Premises**") pursuant to a lease dated April 11, 1980 (the "**Lease**")[2] with 542 Holding Corp. (the "**Co-Op**"), as landlord.[3] The Co-Op, is a cooperative housing corporation and owner of the building in which the Premises are located.

6. The Lease is for a term of 99 years, with two 50-year options to renew by the Debtor, the extended term of which runes for another 162 years. The rent due under the Lease is based upon a fixed calculation of 19.99% of the "net expenses of the building." *See* MOT., Ex. B. The Debtor's rent under the Lease has been substantially less than market rate.

7. The Premises is divided into two separate retail spaces: the North Store and the South Store. Since 1994, M.K. Sportswear, Inc. ("**MK**"), a shareholder of the Debtor, has been in control of the North Store, and Doron Zabari, as principal of the Debtor's other shareholder, has been in control of the South Store pursuant to an agreement between the shareholders. *See Declaration of Doron Zabari Pursuant to Rule 1007-2 ¶* [hereinafter *Declaration*] [Doc. No. 10].

---

[2] *See* MOT., Ex. B (*Lease*).
[3] The Lease was assigned to the Debtor by 542 Equity Associates pursuant to an *Assignment of Lease* executed on April 11, 1980, concomitant with the Lease.

8. In May of 2015, the Co-Op purportedly sold its interest in the Premises, which had been converted into a retail condominium, to 60G, which financed the purchase with the proceeds of a $12,900,000 secured loan from Meadow Partners LLC. *See id.*

9. However, this transfer was merely part of the overall scheme to deprive the Debtor of its Lease, evidenced by the terms of promissory note itself, which requires 60G to evict the Debtor and re-let the Premises at ***market neutral terms***. *See* WIENER AFF., Ex. D at 28 and 47. Moreover, despite 60G's claims that 60G will be "severely prejudiced" by the Debtor's occupancy in light of the foreclosure and sale with respect to the Premises (*See* MOT ¶ 4), the foreclosure action not only remains unopposed by 60G, but the parties have extended the date of the sale twice thus far. *See* WIENER AFF., EX. D at 337.

10. As expected, shortly after taking title to the Premises, 60G immediately embarked on a campaign to terminate the Debtor's tenancy, in a blatant attempt to deprive the Debtor of its valuable leasehold interest at all cost.

**A. The Alleged "Insurance Default"**

11. On March 4, 2016, 60G served the Debtor with a *Notice of Default,* alleging, *inter alia*, that the Debtor was in default of its obligation under the Lease to name 60G as an additional insured.[4] *See* MOT., Ex G (*Notice of Default*).

12. Thereafter, although the Debtor had sufficient insurance in place in favor of the Co-Op and any successor owner, the Debtor, out of an abundance of caution, obtained the requisite prospective coverage naming 60G as an additional insured during the cure period. *See* WIENER AFF., Ex. A (*Certificate Of Liability Insurance*)

---

[4] Most notably, the Debtor has occupied the Premises for 35 years without any discernable need for this change in coverage; and to date, no claims have been asserted against 60G with respect to the alleged "insurance default" at issue.

4

13. The Debtor also timely commenced an action in the New York Supreme Court, County of New York, styled, *Prince Fashions, Inc. v. 60G 542 Broadway Owner, LLC*, Index No. 651255/16 (N.Y. Sup. Ct. 2018), seeking a *Yellowstone*[5] injunction, in order maintain the *status quo* pending resolution of the underlying merits.

14. By Decision/Order entered on July 1, 2016 (the "**Supreme Court Order**"), the court granted *Yellowstone* relief in part, excluding relief with respect to the alleged "insurance default," finding that the Debtor failed to obtain an insurance policy covering the alleged 10-month gap period—the period between the date that 60G took title to the Premises until the date that the Debtor's prospective insurance took effect, March 10, 2016. *See* WIENER AFF., Ex.'s A and B (*Certificate of Liability Insurance* and *Supreme Court Order*, respectively). Notably, the Supreme Court Order recognized that the Debtor's insurer, "could write a policy after the period going back in time to cover claims that could have been made and/or occurrences for the earlier period." *See id.,* Ex. B at 6:15-18.

15. On appeal, the Appellate Division of the New York Supreme Court, First Department, affirmed denial of the Debtor's *Yellowstone* motion on the insurance issue. *See Prince Fashions, Inc. v. 60G 542 Broadway Owner, LLC*, 149 A.D.3d 529, 53 N.Y.S.3d 24 (1st Dept. 2017). *See id.,* Ex. C (*Appellate Division Order*).

16. 60G then commenced a summary holdover proceeding in the Civil Court of the City of New York, styled, *60G 542 Broadway Owner, LLC v. Prince Fashions, Inc., et al.*, L&T Index No. 69380/2016 (N.Y.C. Civ. Ct. 2016) (the "**Holdover Proceeding**"), seeking to

---

[5] A "*Yellowstone*" action is an action based on the New York case *First Nat'l Stores v. Yellowstone Shopping Ctr*., 2l N.Y.2d 630, 237 N.E.2d 868, 290 N.Y.S.2d 721 (N.Y. 1968). "The purpose of a Yellowstone injunction is to allow a tenant confronted by a threat of termination of the lease to obtain a stay tolling the running of the cure period so that after a determination of the merits, the tenant may cure the defect and avoid a forfeiture of the leasehold." *Long Island Gynecological Service, P.C. v. 1103 Steward Ave. Assocs. Ltd. P 'ship,* 224 A.D. 2d 591, 593, 638 N.Y.S. 2d 959 (2d Dep't 1996).

terminate the Lease based upon the alleged breach of the insurance provision, pursuant to a conditional limitation clause. Although the court initially granted 60G's motion for a judgment of possession on September 20, 2017 (the "**Summary Judgment Order**"), upon renewal, by Decision/Order, dated February 9, 2018 (the "**Renewal Order**"), the court granted the Debtor's motion for reargument and renewal from the Summary Judgment Order, based in part upon 60G's documented withholding of critical facts from the court, as well as previously unavailable evidence introduced by the Debtor that raised triable issues with respect to the Debtor's untried defenses. *See* MOT. Ex's N and O (*Summary Judgment Order* and *Renewal Order*, respectively).

17. On 60G's appeal of the Renewal Order to the Appellate Term, First Department, the court reversed the Renewal Order and granted 60G a judgment of possession with the warrant to issue forthwith (the "**Appellate Term Order**"). *See* MOT., Ex. D (Appellate Term Order). However, the Appellate Term Order emphasized that the Appellate Division, First Department's 2017 Order denying Yellowstone relief, "was not an adjudication of the merits of the validity of landlord's termination of the lease and did not constitute law of the case." *See id.*

18. Since the Appellate Term Order was issued, the Debtor has discovered that pursuant to 60G's mortgage agreements with Meadow Partners LLC, 60G was *legally required* to maintain its own insurance policies for the entire period in question, defeating 60G's claim that it was left "exposed" by any supposed insurance default by the Debtor. *See* WIENER AFF., EX. D (*Verified Foreclosure Complaint*).

19. The Debtor has maintained that there has been no material breach of the Lease because: (i) the Lease did not specify the amount of (or from which carriers) insurance was required; (ii) 60G and its predecessor, for decades, had accepted the insurance the Debtor had in

6

place at the time the Default Notice was served; and (iii) 60G was covered by its own insurance during the alleged "default period."

20. Notwithstanding its meritorious defenses, the Debtor was able to procure retroactive insurance naming 60G as an additional insured for the entire 10-month "gap" period. *See id*. Ex's A, E and F (Proofs of Insurance). Accordingly, by obtaining both prospective and retroactive insurance, the Debtor had indisputably cured the alleged "insurance default" and, upon information and belief, no claims have ever been asserted against 60G with respect to the 10-month "gap" period.

21. Nevertheless, 60G maintains that, by virtue of the conditional limitation provision, the Lease was terminated on July 5, 2016, the date specified in the *Notice of Termination*. *See* MOT. ¶ 46.

22. The Debtor has since filed a motion to renew the *Yellowstone* motion (the "**Motion to Renew**") in the New York Supreme Court—which court has never addressed the merits as to whether the "alleged default" was, in fact, "incurable"—premised upon the Debtor's subsequent acquisition of retroactive insurance. If granted, the Motion to Renew will have the effect of vacating 60G's warrant of eviction. *See* WIENER AFF., Ex. H (*Motion to Renew*).

23. On May 24, 2019, MK filed a motion for leave to intervene and to dismiss the petition and vacate the judgment of possession in the Holdover Proceeding (the "**Motion to Vacate**") based on 60G's failure to name and serve MK, a necessary party to the proceeding, despite actual knowledge of MK's long-term subtenancy. *See id.* Ex. G. The Debtor subsequently joined in support of MK's motion, which is pending. *See id.* Ex G *(Reply Affirmation in Further Support of Motion for Leave to Intervene and to Dismiss)*.

### B. The Debtor's Bankruptcy Filing

24. To date, the Debtor has incurred over $600,000 in legal fees defending its leasehold interest against the Co-Op and 60G. Confronted with the imminent risk of losing its only asset and sole source of revenue, the Debtor, acting *pro se* petitioned this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**") on May 29, 2019 (the "**Petition Date**") intending to utilize the protections of chapter 11 of the Bankruptcy Code to reorganize in an orderly fashion.

25. Since the Petition Date, the Debtor has retained Rosen & Associates, P.C. as bankruptcy counsel,[6] and has continued to operate its business and manage its affairs in the ordinary course as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

26. As part of its reorganization strategy, the Debtor intends to (i) assume the Lease under section 365 of the Bankruptcy Code, by obtaining relief from this Court (if needed) to prosecute the pending motions in the state court in order to vacate the warrant of eviction, and thus render the Lease assumable under section 365; and (ii) commence an adversary proceeding in this Court to recharacterize the Debtor's interest in the Lease as an ownership interest pursuant to applicable law. *See e.g., 48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse*), 835 F.2d 427, 430 (2d Cir.1987) ("Indeed, a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay."); *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 749 (2d Cir. 1991) (99-year term as one of two unusual aspects rendering the agreement as not a true lease).

---

[6] Subject to the Court's approval.

27. Despite these good faith intentions and for the reasons discussed below, 60G has failed to provide a basis for either dismissal or stay relief for cause. 60G's untenable positions are underscored by the Motion's conclusory allegations and distortions of the relevant facts. Accordingly, its Motion must be dismissed.

**ARGUMENT**

**I. 60G HAS FAILED TO ESTABLISH CAUSE FOR DISMISSAL OF THE DEBTOR'S BANKRUPTCY CASE**

28. Under section 1112(b) of the Bankruptcy Code, the bankruptcy court may dismiss any case for "cause." *See* 11. U.S.C. § 1112(b)(1). In addition to the sixteen factors enumerated in the Bankruptcy Code, courts have held that "cause" for dismissal exists when a petition is not filed in good faith. *In re C-TC 9th Ave. P'ship*, 113 F.3d 1034, 1310-11 (2d Cir. 1997); *In re 68 West 127th Street LLC,* 285 BR. 838, 846 (Bankr. S.D.N.Y. 2002).

29. However, courts have cautioned that dismissal for bad faith is an extraordinary remedy, which must be utilized sparingly, and "only upon a clear showing of abuse of bankruptcy process," so as to avoid "denying bankruptcy relief to statutorily eligible debtors except in ***extraordinary circumstances***." *In re Johns-Manville Corp.,* 36 B.R. 727, 737 (Bankr. S.D.N.Y. 1984), *In re Schur Mgmt. Co., Ltd.*, 323 B.R. 123, 126 (Bankr. S.D.N.Y. 2005) (emphasis added). *See also In re 1633 Broadway Mars Rest. Corp.*, 388 B.R. 490, 498 (Bankr. S.D.N.Y. 2008) (dismissal for bad faith as extraordinary remedy to be used with great care and caution) (quotations omitted).

30. The moving party bears the burden of proving bad faith sufficient to warrant the extraordinary remedy of dismissal. *In re Century/ML Cable Venture,* 294 B.R. 9, 34 (Bankr. S.D.N.Y. 2003); *In re Greene,* 57 B.R. 272, 276 (Bankr. S.D.N.Y. 1986) (burden of proving bad faith rests squarely on the party seeking such relief); *see also In re R & G Props., Inc.*, Case No.

9

08-10876, 2009 WL 1076703, at *1 (Bankr. D. Vt. April 16, 2009) (creditor failed to satisfy burden).

31. The precepts of bad faith were developed by the Second Circuit Court of Appeals in *In re Cohoes Industrial Terminal Inc.,* 931 F.2d 222 (2d Cir. 1991) and *In re C-TC 9th Avenue Partnership,* 113 F.3d 1304 (2d Cir. 1997). Under these decisions, the prevailing test in the Second Circuit requires that the moving party establish "**both** objective futility of the reorganization process **and** subjective bad faith in filing the petition". *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) (emphasis in original); *In re 68 West 127th Street LLC,* 285 BR. 838, 846 (Bankr. S.D.N.Y. 2002) (synthesizing *Cohoes Indust. Terminal* and *C-TC 9th Avenue); see also In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996).

32. Unless it is clear that on the filing date (i) there was no reasonable likelihood that the debtor intended to reorganize and (ii) there is no reasonable possibility that the debtor would eventually emerge from bankruptcy proceedings, the case must not be dismissed. *In re RCM Global Long Term Corp. Appreciation Fund Ltd.,* 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996); *In re Eatman*, 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995) (quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992) (movant must show "both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamental unfair purpose that was not in line with the spirit of the Bankruptcy Code.").

**A. The Debtor's Bankruptcy Case Was Filed in Good Faith**

33. In its Motion, 60G concludes that the petition was filed in subjective bad faith upon review of the factors enumerated by the Court in *In re C-TC 9th Avenue Partnership*

(the "***C-TC Factors***").[7] However, 60G's exclusive reliance on the *C-TC* Factors is misplaced: in listing these factors, the Second Circuit itself explained that: "this list is illustrative, not exhaustive … [A] determination of bad faith requires a full examination of all circumstances of the case. *C-TC 9th Ave. P'shisp*, 113 F.3d at 1311-12.

34. In fact, "the subjective bad faith standard is meant to insure that the Debtor actually intends to use chapter 11 to reorganize and rehabilitate itself and not simply cause hardship or delay to creditors by invoking the automatic stay." *RCM Global*, 200 B.R. at 522. As this Court has acknowledged, "[t]he existence of 'bad faith' depends not on any one specific factor but on a combination of factors determined after careful examination of the facts of the particular debtor's case." *In re 68 West 127th Street LLC,* 285 BR. 838, 844 (Bankr. S.D.N.Y. 2002) (citing *In re Shar*, 253 B.R. 621, 629 (Bankr. D.N.J.1991)). The *C-TC factors* "do no more than assist the [Court's] exercise of discretion in deciding when a debtor has improperly invoked the Bankruptcy Code." *Id.*

35. The inquiry behind a good faith analysis was further explained by the Second Circuit when it stated that "[t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." *C-TC 9th Avenue,* 113 F.3d at 1310 (citing *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir. 1985)).

---

[7] Namely, whether:
> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees.

*See* MOT. ¶¶ 37-40.

11

36. 60G has provided no evidence that the Debtor lacked the intent to reorganize on the Petition Date. To the contrary, the evidence presented demonstrates that the Debtor filed its petition with the good faith intent to protect and preserve the Lease and successfully reorganize. As mentioned, the Debtor intends to recharacterize the Lease as an ownership interest, and, if needed, proceed before the state court to exercise its rights and remedies to vacate the warrant. Success on either front will enable the Debtor to maintain the Lease as an income producing vehicle and fund payments to its creditors, pursuant to a plan of reorganization.

37. In any event, 60G bases much of its allegation of bad faith on the fact that a judgment of possession and warrant of eviction have been issued by the New York Civil Court, the enforcement of which has now been stayed. However, even if 60G is frustrated by this, this alone does not render the case a bad faith filing. The enforcement of the automatic stay to prevent a party from obtaining possession of estate property, without more, is a "consequential benefit of an otherwise good faith filing." *In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 128 (3d Cir. 2004).

38. As one court succinctly stated:

> [The creditor's] bad faith arguments are quite conclusory, and, in the judgment of the Court, manifest its understandable 'frustration' with the Debtor's bankruptcy filing rather than a showing of the Debtor's 'abuse of judicial purpose.' Simply checking off these factors on the list does not prove bad faith.

*In re R & G Properties, Inc.,* Case No. 08-10876, 2009 WL 1076703, at *3 (Bankr. D.Vt. Apr. 16, 2009) (internal citations omitted). *See also Cohoes Indus. Terminal*, 931 F.2d at 228. ("Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be frustrated when their debtor files a bankruptcy petition.").

39. To be sure, even "the filing of a bankruptcy petition on the eve of a foreclosure . . . does not, by itself, establish a bad faith filing." *In re Syndicom*, 268 B.R. 26, 47-18 (Bankr. S.D.N.Y. 2001); *see also In re Kingston Square Assocs.,* 214 B.R. 713, 734, 736-37 (Bankr. S.D.N.Y. 1997) (eve-of-foreclosure filing not in bad faith despite circumvention of bankruptcy remote board structure, because bankruptcy preserved value for handful of unsecured creditors and debtor's limited partners).

40. As this Court has noted: "the exercise of a statutory right or remedy should rarely, if ever, be said to be in bad faith." *68 W. 127 St.. LLC*, 285 B.R. at 844 (emphasizing that the relevant inquiry be the permissible uses of the Bankruptcy Code to avoid the risk that a legitimate reorganizational purpose be taken out of context).

41. In addition, although 60G makes much of the fact that the Lease is the Debtor's sole asset, this statement is incorrect. As evidenced by the Debtor's *Schedule of Assets and Liabilities* [Doc. No. 1], the Debtor has numerous other assets including equipment, furniture, security deposits and a potential avoidance action. Moreover, it cannot be said that bad faith arises simply because this a "single asset real estate case," particularly when considering the numerous provisions in the Bankruptcy Code that expressly recognize these types of filings. *See e.g.,* 11 U.S.C. §362(d)(3); *see generally* COLLIER ON BANKRUPTCY § 1112.07 [6][b][ii] (16th ed.) ("The presence of the specific single asset real estate provisions strongly suggest that such cases are not per se filed in bad faith"); *In re Balboa Street Beach Club. Inc.,* 319 B.R. 736, 742 (Bankr. S.D. Fla. 2005) ("[A] single asset real estate [sic] is not *per se* a bad faith filing, since Congress in the 1994 Amendments to the Bankruptcy Code implicitly allowed single asset real estate cases by assigning a definition to them under 11 U.S.C. § 101(5)(b)").

42. Similarly, despite 60G's claims, this has become much more than a two-party dispute, as the Debtor has on-going obligations to sub-tenants and numerous other parties whose rights are affected under the Lease, and has substantial liabilities spread among various other creditors whose claims must be addressed in this proceeding.

43. Thus, when examined under the circumstances of this case consideration of the relevant *C-TC* Factors makes clear that the Debtor's bankruptcy filing was in utmost good faith.

### B. 60G Has Failed to Establish that the Debtor's Bankruptcy Case Is Objectively Futile

In determining objective futility, the inquiring court assesses whether "there exists the realistic possibility of an effective reorganization." *Squires Motel, LLC v. Gance*, 426 B.R. 29, 34 (N.D.N.Y. 2010) (citing *In re Carolin Corp.,* 886 F.2d 693, 698-701 (4th Cir. 1989)). "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre.*" *C-TC 9th Avenue,* 113 F.3d at 1310 ((citing *In re Winshall Settlor's Trust,* 758 F.2d 1136, 1137 (6th Cir. 1985)).

44. However, when evaluating a motion to dismiss at a relatively early stage in the case, courts are urged to exercise great care and caution, so as to avoid "denying access at the very portals of bankruptcy." *Carolin* 886 F.2d at 701. Here too, 60G has fails to establish that there is no possibility of an effective reorganization.

#### *(i) The Lease Is Not in Default*

45. 60G asserts that because the Lease has been terminated pursuant to the conditional limitation clause, or otherwise by virtue of the Appellate Term Order, the Debtor "has no reasonable probability to confirm a plan as it will be unable to assume its terminated Lease." Mot. ¶ 41-43.

14

46. As an initial matter, the Lease has **not** been terminated by either the conditional limitation clause or the Appellate Term Order, especially in light of the Debtor's cure.

47. In fact, while the parties have disputed the validity of the "insurance default" and warrant of eviction in the context of *Yellowstone* relief, it is beyond cavil that there has been ***no trial on the merits***, by any court upholding the validity of the alleged "insurance default."

48. Under New York state law, the purpose of a *Yellowstone* injunction is to allow a commercial tenant to "maintain the *status quo* … when confronted by a threat of termination … by obtaining a stay tolling the cure period so that upon an adverse determination on the merits the tenant may cure the default and avoid a forfeiture.'" *Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Assocs.,* 93 N.Y.2d 508, 715 N.E.2d 117 (1999). However, it is well settled that the grant or denial of a *Yellowstone* injunction, "does not constitute the law of the case, nor does it serve as an adjudication of the merits of the underlying claim." *In re Hotel Syracuse, Inc.*, 155 B.R. 824, 833 (Bankr. S.D.N.Y. 1993) (*citing Park East Apts., Inc. v. 233 East 86th Street Corp.*, 529 N.Y.S.2d 674, 676 (Sup. Ct. 1988), *aff'd,* 143 Misc.2d 60, 543 N.Y.S.2d 610 (1st Dept 1989).

49. Here, while the denial of the Debtor's request for a *Yellowstone* injunction meant that the Debtor failed to maintain what was then the *status quo,* this only means that, "if it is determined that the [Debtor] breached its lease, it will not have preserved any right to cure the default… it **does not render litigation** on the substantive issues academic." *La Lanterna, Inc. v. Fareri Enterprises, Inc.,* 37 A.D.3d 420, 421, 831 N.Y.S.2d 190 (2007). This is further buttressed by Justice Braun's ruling in the Supreme Court Order:

> [60G] was at risk for any claims made during that period, although I suppose its [sic] possible that an insurance

15

> company could write a policy after the period going back in time to cover claims that could have been made and/or occurrences for the earlier period. There's no proof that the plaintiff obtained such a policy.

See WIENER AFF., Ex. B at 6:15-18.

50. In addition, 60G has failed to address how the Appellate Term Order—which confirmed the termination of the Lease pursuant to a "incurable insurance default"—renders the Lease terminated, when the Appellate Term never even considered the potential procurement of retroactive insurance.

51. Likewise, 60G's contention that the Lease cannot be assumed under section 365 of the Bankruptcy Code is also unavailing. As mentioned, two motions are currently pending in the New York state courts that seek to vacate the warrant at issue. Thus, the issue remains outstanding for purposes of bankruptcy. *See In re Musikahn Corp.*, 57 B.R. 938, 940 (Bankr. E.D.N.Y. 1986) (because the Second *Yellowstone* action is pending in the State Court, the State Court's denial of the request for the Second *Yellowstone* injunction did not conclude the litigation).

52. As such, 60G's contention that, "there is no basis under New York state law to revive its leasehold interest … [n]otwithstanding the fact that [the Debtor] filed …bankruptcy prior to the execution of the Warrant of Eviction," is incorrect as a matter of law. *See* MOT. ¶ 43-44 (citing *Super Nova 330 LLC v. Gazes*, 693 F3d 138 (2d Cir 2002)).

### *(ii) The Debtor Has Both the Intent and Ability to Reorganize*

53. As discussed above, 60G's contention that the Lease has been properly terminated defies credulity in light of the invalidation of the *Notice of Default* in light of the Debtor's cure and the motions pending in the state court. Nevertheless, through its Motion, 60G is asking the Court to make the absurd conclusion of law that objective futility is established because the Lease has been terminated and the Debtor will be unable to assume it. *See* MOT. ¶¶ 42-49.

16

54. As an initial matter, courts have held that for purposes of 365 of the Bankruptcy Code, to determine whether a transaction is a "lease" the focus is on the economic substance of the agreement rather than its form or label. *See Int'l Trade Admin. v. Rensselaer Polytechnic Ins.*, 936 F.2d 744, 748 (2d Cir. 1991).

55. Additionally, conditional limitations are not universally in the context of a bankruptcy, especially where enforcement would lead to lease forfeiture. In fact, the Court of Appeals for the Second Circuit has specifically recognized the power of bankruptcy courts to retain discretion when determining that lease provisions, when enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets. *Queens Boulevard Wine & Liquor Corp. v. Blum*, 503 F.2d 202 (2nd Cir. 1974); *see also In re 48th Street Steakhouse*, 835 F.2d 427, 430 (2d Cir.1987) (the bankruptcy court, sitting in equity, will be inclined to give full consideration to the rights of the other creditors of the debtor/ tenant and to balance their rights and the rights of the debtor against the protections that the law affords to the landlord. On the other hand, the state court will more narrowly construe a lease in light of the legal terms of the lease).

56. As discussed, the Debtor has legitimate opportunities to reorganize under the bankruptcy law. In *68 West 127 Street LLC,* the Court held that for purposes of rehabilitating distressed property, when there was a reasonable possibility of confirming a plan, even a petition filed by a debtor, "with no income…, no employees, and only one asset, an empty and derelict residential building scheduled for foreclosure on the same day as the petition was filed, was not a bad faith filing so as to permit relief from the automatic stay to allow the foreclosure to proceed." *68 West 127 Street LLC*, 285 B.R. at 847-48.

57. So too here, the Debtor submits that it should be given the opportunity to rehabilitate its business; not be penalized for using the Bankruptcy Code as intended. S*ee id.* at

17

845 ("It is not bad faith to seek to gain an advantage from declaring bankruptcy-why else would one declare it?") (citing *In re James Wilson Assocs.,* 965 F.2d 160, 170 (7th Cir.1992).

58. As such, although 60G may disagree with the Debtor's decision to file its petition, and allege that the Debtor cannot reorganize, it must be at least given an opportunity to do so.

## II. THE AUTOMATIC STAY APPLIES BECAUSE THE LEASE HAS NOT BEEN TERMINATED

59. 60G asserts that the Lease has been terminated pursuant to the conditional limitation clause, or otherwise by virtue of the Appellate Term Order, thus rendering the automatic stay inapplicable to any eviction proceeding it may pursue. *See* MOT. ¶ 54-55. However, as mentioned above, the Lease has not been terminated.

60. In any event, even if denial of the Debtor's request for a *Yellowstone* injunction terminated the Lease under the conditional limitations clause, it is well-settled that, while "[t]he issuance of a warrant of eviction severs the landlord-tenant relationship, the debtor's possessory interest in the property can support sustaining the automatic stay." *In re Griggsby*, 404 B.R. 83 (Bankr. S.D.N.Y. 2009); *In re Marcano,* 288 B.R. 324, 338 (Bankr.S.D.N.Y.2003) ("Notwithstanding the issuance of a warrant, the tenant still retains 'an equitable interest in the property, and the potential to reinstate the landlord-tenant relationship.' The ... state court retains the ability to vacate the warrant and order a tenant reinstated at least until actual execution of the warrant. In appropriate cases, bankruptcy courts have continued the automatic stay of § 362 in order to give the tenant an opportunity to seek an order from the state court vacating a warrant of eviction.").

## III. 60G HAS FAILED TO ESTABLISH CAUSE TO LIFT THE AUTOMATIC STAY

61. 60G alternatively requests relief from the automatic stay to allow 60G to exercise its state law remedies against the Debtor, claiming that the Debtor's alleged "bad faith bankruptcy filing" constitutes "cause" under section 362(d)(2) of the Bankruptcy Code. *See* MOT. ¶ 60.

62. However, as demonstrated above, the Debtor's bankruptcy filing was made in good faith and for the proper purpose of protecting and preserving the Lease and fulfilling its fiduciary duties to creditors. Contrary to the authority cited in the Motion, this is not the case where a debtor seeks to forestall foreclosure or gerrymander its classes under a plan to cram down a secured lender.

63. In sharp contrast, under the Debtor's reorganization strategy, the rights of 60G will not be adversely affected in any way, but rather, upon assumption of the Lease, 60G will receive the benefit of its bargain – no more, no less.

64. Under these circumstances, the Debtor submits that it would be premature and unwarranted to grant 60G stay relief at this juncture. Given the harm that 60G and its predecessor have inflicted, the Debtor respectfully submits it is entitled to a fair opportunity to preserve its Lease and reorganize within a reasonable time. *See United Savings Association v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 376 (1987) (lift-stay motion is made in the early stages of a bankruptcy case, and particularly prior to the termination of exclusivity, the courts "demand less detailed showings" of reorganization prospects).

## CONCLUSION

65. For the reasons set forth above, the Debtor requests the Motion be denied in its entirety.

Dated: New York, New York
       July 17, 2019

                                       **ROSEN & ASSOCIATES, P.C.**
                                       *Proposed Counsel to the Debtor and*
                                          *Debtor in Possession*

                                      By: _____
                                                Paris Gyparakis

                                      747 Third Avenue
                                      New York, NY 10017-2803
                                      (212) 223-1100