ROBINSON BROG LEINWAND GREENE
  GENOVESE & GLUCK P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300
A. Mitchell Greene, Esq.
Steven B. Eichel, Esq.

*Attorneys for 60G 542 Broadway Owner, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                    Chapter 11
                                                          Case No. 19-23079 (RDD)

**PRINCE FASHIONS, INC.,**

                              Debtor.
-----------------------------------------------------------X

**60G 542 BROADWAY OWNER, LLC'S REPLY TO DEBTOR'S RESPONSE
IN OPPOSITION TO MOTION FOR THE ENTRY OF AN ORDER (I) DISMISSING
THE CHAPTER 11 PETITION, OR, IN THE ALTERNATIVE, (II) FINDING
THAT THE AUTOMATIC STAY DOES NOT PREVENT 60G 542 BROADWAY
OWNER, LLC FROM EVICTING DEBTOR, OR, IN THE ALTERNATIVE,
(III) GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT
TO 11 U.S.C. §362, AND (IV) FINDING THAT THE AUTOMATIC STAY
<u>DOES NOT EXTEND TO ANY NON-DEBTOR</u>**

60G 542 Broadway Owner, LLC ("60G"), by and through its undersigned counsel,

submits this reply (the "Reply") to Debtor's response in opposition to motion for order (a)

dismissing the chapter 11 petition of Prince Fashions, Inc. ("Prince" or "Debtor") pursuant to 11

U.S.C. §1112(b) with prejudice; or, in the alternative, (b)finding that the automatic stay does not

prevent 60G from evicting Prince from the subject premises; or, in the alternative, (c) granting

relief from the automatic stay pursuant to 11 U.S.C. §362(d) so that 60G can proceed with

evicting Prince; and (d) finding that any automatic stay to which Prince is entitled does not

extend to any non-debtor.

01017442--2

## PRELIMINARY STATEMENT

1.      Prince's response demonstrates that it is seeking to re-litigate issues that have already been decided in 60G's favor by multiple state courts over the past several years. Contrary to the Debtor's contention, there is no valid lease in existence between it and the 60G. As the default provision in the Lease is a conditional limitation, the Lease[1] and Prince's tenancy terminated on July 5, 2016, the date specified in the Notice of Termination sent to Prince. Prince had an opportunity to seek injunctive relief from the Supreme Court or the Appellate Division between July 1, 2016 and July 5, 2016 (when the cure period expired), but it failed to do so. The Appellate Division determined that Prince's lease was terminated and appellate relief was barred. Prince Fashion v. 60 G 542 Broadway Owner, 149 A.D.3d 529 (1st Dept. 2017). Moreover, on December 10, 2018, the Civil Court issued a warrant of eviction with respect to the Premises against Prince and Foravi.    In case there was any doubt about Appellate Division's decision regarding the termination of the Lease in 2016, the 2018 warrant of eviction terminated the Lease and annulled the landlord/tenant relationship between 60G and Prince. The filing of the bankruptcy does not revive the terminated Lease and thus the Lease cannot be assumed under section 365 of the Bankruptcy Code.

2.      Prince has exhausted all rights of appeal with respect to the warrant of eviction. However, notwithstanding its inability to further appeal the warrant of eviction, Prince, to further frustrate and delay 60G's attempt to evict it, seeks to start the litigation process all over again by filing a new (and second) motion seeking renewal of the State Court's Decision and order

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Landlord's motion for order (a) dismissing the chapter 11 petition of Prince Fashions, Inc. pursuant to 11 U.S.C. §1112(b) with prejudice; or, in the alternative, (b) finding that the automatic stay does not prevent 60G from evicting Prince from the subject premises; or, in the alternative, (c) granting relief from the automatic stay pursuant to 11 U.S.C. §362(d) so that 60G can proceed with evicting Prince; and (d) finding that any automatic stay to which Prince is entitled does not extend to any non-debtor (the "Motion").

denying Prince's application for a Yellowstone injunction and for renewal of the State Court's prior order denying Prince's first motion to renew by asserting that it obtained retroactive insurance. This "new" defense is three years (and numerous court decisions) too late. To the extent that Prince asserts that it has meritorious defenses, they have been rejected. The Appellate Term and First Department determined that that the lack of insurance was a non-curable default occurred entitling 60G to possession. Prince's delay tactics should not be countenanced.

3.      The bankruptcy is Prince's last ditch effort to prevent a lawful eviction, while it seeks to pursue its second motion to renew the Yellowstone Injunction, the first one having failed. Moreover, as there is no lease, the state court motion is academic, the effect of which deprives 60G of its right to the property.

4.      Contrary to Prince's contentions, 60G has established cause for dismissal of the bankruptcy case. 60G has established that the bankruptcy petition was filed in subjective bad faith. In contrast, notably absent from the Debtor's opposition is a detailed application of the factors set forth in C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship), 113 F.3d 1304 (2d Cir. 1997). The Debtor asserts that it has more than one asset, but these are of de minimis value (less than $6,600) as compared to the Lease (which is listed at a value of $15 million). Moreover, the Debtor's contention that it has "substantial liabilities spread among various other creditors" is slightly disingenuous because there are no secured creditors and only four unsecured creditors, all of which are professionals. An analysis of the CTC factors demonstrates that the bankruptcy case was filed in subjective bad faith. Prince's bankruptcy petition is also objectively futile as Prince's Lease has been terminated. Prince incorrectly asserts that the Lease is not terminated and relies on that false premise as the basis for its argument that its prior Lease that can be assumed in the bankruptcy case (if it is allowed to re-

litigate the Yellowstone injunction issue and is successful). As a result, the Court should dismiss the bankruptcy case with prejudice to allow 60G to exercise it state court remedies -- evicting Prince and regain possession of the Premises. If the Court decides to retain the case, the Court should determine that the automatic stay does not apply because there is no Lease, or alternatively, modify the stay to allow 60G to proceed with its remedies.

## ADDITIONAL FACTUAL BACKGROUND

5.      In light of Prince's contentions regarding still pending motions in both the New York State Supreme Court and the New York City Civil Court, it is necessary to provide the Court with additional background facts.

### Prince's Incurable Default Under the Lease

6.      The dispute between 60G and Prince arises out of Prince's incurable default of its obligations under the Lease. Specifically, Article 8 of the Lease required Prince to maintain, at all times:

> . . . general public liability insurance in standard form in favor of Landlord and Tenant against claims for bodily injury or death or property damage occurring in or upon the demised premises, effective from the date Tenant enters into possession and during the term of this lease.

Lease, Art. 8 (emphasis added).

7.      Significantly, and as set forth in this Lease provision, the obligation to maintain insurance falls on the tenant (Prince) and requires that Prince obtain insurance in favor of both the Landlord and itself.

8.      On March 4, 2016, 60G issued the Notice of Default to Prince, in which 60G declared the occurrence of certain defaults under the Lease. Included among the multiple defaults

4

was Prince's failure to maintain general liability insurance and failure to provide a copy of such policy to 60G. See, Declaration of Bastien Broda, Ex. G.[2]

**Prince's Admission of Its Incurable Default**

9.    In response to the Notice of Default, Prince filed its Verified Complaint, dated March 10, 2016, (the "Complaint") in the New York State Supreme Court seeking the imposition of a *Yellowstone* injunction. See, Declaration of Nolan E. Shanahan, dated July 18, 2019 (the "Shanahan Decl."), Ex. A. The Complaint confirms that Prince failed to maintain the required general liability insurance for a significant period of time but Prince simply raised a host of baseless excuses in an attempt to justify its default.

**The Denial of Prince's *Yellowstone* Application and the Holdover Proceeding**

10.    By Decision and Order dated on June 30, 2016 and entered on July 1, 2016, the New York State Supreme Court, by the Honorable Richard F. Braun, J.S.C., denied Prince's application for a *Yellowstone* injunction (the "Braun Order"). See Shanahan Decl. Ex. B. In the Braun Order, the Court held that: (i) Prince had breached Article 8 of the Lease by failing to maintain general liability insurance; and (ii) such violation constituted an incurable default as a matter of law. Specifically, Justice Braun held:

> [Prince] was required to have liability insurance and did not do so for the entire period starting with when [60G] first became the owner and landlord of the subject premises . . . .[Prince] had a responsibility to have such insurance. The defendant was at risk for any claims during the period, although I suppose it's possible that an insurance company could write a policy after the period going back in time to cover claims that could have been made and/or occurrences for the earlier period. There's no proof that [Prince] obtained such a policy.

Braun Order, pp. 5-6.

---

[2] The Declaration of Mr. Broda was filed with the Motion.

01017442--2

11.     As a result of this first denial of Prince's *Yellowstone* application, 60G issued to

Prince a Notice of Lease Cancellation, terminating Prince's tenancy effective July 5, 2016. Prince

did not seek a stay to preserve the status quo from either the Supreme Court or the Appellate

Division at any time from the date the Supreme Court denied its *Yellowstone* application until the

effective date of the Notice of Lease Cancellation. Instead, Prince waited until July 27, 2017 to

file its Notice of Appeal of the denial of the *Yellowstone* application and September 6, 2016, two

months after the Lease was terminated, to seek a stay pending appeal from the Appellate

Division.

12.     On July 11, 2016, 60G commenced the Holdover Proceeding with the service and

filing of its Petition, based on Prince's incurable and material default in obtaining insurance.

60G filed the Summary Judgment Motion on August 5, 2016 seeking a final judgment of

possession in the Holdover Proceeding.

13.     Less than one week later, on October 11, 2016, the Appellate Division granted

Prince's motion seeking a stay of the Holdover Proceeding pending the determination of Prince's

appeal of the Order denying the *Yellowstone* injunction. As a result of the Appellate Division's

Order, by Decision and Order, dated October 12, 2016, Judge Edwards ordered that the motions

pending in the Holdover Proceeding be held in abeyance pending the determination of Prince's

appeal.

**The Denial of Prince's Appeal, the Restoration of the Holdover Proceeding, and Prince's
First Renewal Motion**

14.     On April 18, 2017, after full briefing and oral argument on Prince's appeal, the

Appellate Division affirmed the Supreme Court's decision denying *Yellowstone* relief in its

entirety. See Shanahan Decl. Ex. C. As set forth in its decision, the First Department held that

6

Prince's failure to timely move for a stay before the termination of the Lease resulted in the

Lease being terminated and barred appellate relief:

> Although plaintiff had the opportunity to seek injunctive relief
> from either Supreme Court or from the Appellate Division
> pursuant to CPLR 5519 between July 1, 2016 and July 5, 2016,
> when the cure period expired, it failed to do so. Because by that
> time, plaintiff's lease was terminated, and a holdover proceeding
> had been commenced, appellate relief is barred."

Prince Fashions, Inc. v 60G 542 Broadway Owner, LLC, 149 AD3d 529 (1st Dept. 2017)

(citations omitted)

15. Additionally, the Appellate Division concurred with the Supreme Court, finding

that Prince's failure to maintain general liability insurance, as required under the Lease,

constituted an incurable default. The Appellate Division specifically held, in pertinent part, as

follows:

> **Because plaintiff's evident failure to obtain insurance naming
> defendant as an additional insured constitutes an incurable
> default, were we to consider the merits, plaintiff would not be
> entitled to Yellowstone injunctive relief.**

Id. (emphasis added). Prince's subsequent motions for leave to reargue and for leave to appeal to

the Court of Appeals were denied by unanimous decision of the First Department, entered July

13, 2017. See, Shanahan Decl. Ex.

16. After the denial of Prince's appeal, the Holdover Proceeding was restored to the

active calendar in Civil Court and by a Decision/Order, dated September 20, 2017, Judge

Samuels granted 60G's motion for final judgment of possession (the "Summary Judgment

Order").

17. Prince subsequently moved in the Civil Court to renew and reargue the Summary

Judgment Order on various bases, including purported new evidence of a so-called conspiracy to

deprive it of its leasehold interest.

7

18. Prince also brought its so-called conspiracy theory before the Supreme Court by the filing of its Order to Show Cause on December 7, 2017 seeking renewal of the denial of its *Yellowstone* application via Braun Order (the "First Renewal Motion").

19. After briefing, oral argument, and supplemental submissions directed by the Court, Judge Samuels, by a Decision/Order, dated February 9, 2018, granted Prince's motion in part. In doing so, Judge Samuels reversed her prior award of summary judgment in 60G's favor and reinstated certain of Prince's affirmative defenses.

**The Denial of Prince's First Renewal Motion and the Appellate Term's Reversal of the Renewal Order**

20. 60G immediately appealed the Renewal Order to the Appellate Term, First Department. A stay of the Holdover Proceeding was granted by the Appellate Term pending its determination of 60G's appeal of the Renewal Order.

21. Prior to the Appellate Term's determination of 60G's appeal, the Supreme Court denied the First Renewal Motion by a Decision and Order, dated May 31, 2018 (the "Perry Order"). See, Shanahan Decl. Ex. D. In denying the First Renewal Motion on the merits, the Supreme Court held:

> Based upon the arguments today, based upon a complete reading
> of both parties' records and the fact that there is an appeal pending
> in the appellate term with regard to the eviction that is alleged, the
> Court is going to deny on the record today the motion to renew
> [the Braun Order].

Perry Order, p. 25.

22. On October 29, 2018, the Appellate Term reversed the Renewal Order, thus confirming the termination of the Lease and 60G's right to regain possession of the Premises. The Appellate Term Order also specifically rejected Prince's claims of an alleged conspiracy, holding as follows:

8

> [Prince's] affirmative defense that landlord acted in bad faith or
> engaged in other misconduct by entering into a "sham mortgage"
> in connection with landlord's purchase of the subject retail
> condominium in May 2015 upon which it ultimately defaulted, was
> insufficient to raise an issue of fact or warrant further judicial
> scrutiny in the context of this holdover summary proceeding. On
> this record, landlord had valid ground for terminating this
> commercial lease, based on tenant's incurable default in obtaining
> insurance naming the landlord as an additional insured.

60G 542 Broadway Owner, LLC v Prince Fashions, Inc., 61 Misc3d 134(A), 2018 WL 5584490,

*2, 2018 NY Slip Op 51498(U) (App Term 1st Dept. 2018).

23. Pursuant to the terms of the Appellate Term Order, 60G was entitled to the

issuance of a warrant of eviction with execution thereon stayed for 60 days (until January 11,

2019) following service of a notice of entry of the Appellate Term Order, which 60G served on

November 7, 2018. Id. The Civil Court issued warrants of eviction against Prince, Foravi, and

OMG.

24. Prince moved in the Appellate Term for leave to reargue, leave to appeal to the

Appellate Division and a stay pending appeal. By order dated December 21, 2018, the Appellate

Term denied Prince's motion to reargue and for leave to appeal to the Appellate Division. On

January 10, 2019, Prince moved in the Appellate Division for leave to appeal the Appellate Term

Order and for a stay pending the determination of that motion. The Appellate Division issued an

Order, dated January 10, 2019, (the "Stay Order") staying enforcement of the Appellate Term

Order while Prince's motion was pending. See Broda Decl. Ex. R.

**Prince's Second Renewal Motion and MK's Motion to Intervene in the Holdover
Proceeding**

25. After the issuance of the Appellate Term Order, Prince filed it second motion

seeking renewal of denial of its *Yellowstone* application based on purported new evidence – a

retroactive policy of insurance, allegedly obtained in March 2018, nearly three (3) years after the

Lease was terminated. This motion has been fully briefed and was scheduled for argument on June 13, 2019, but such argument was not held because of the automatic stay in place as a result of Prince's bad faith bankruptcy filing on May 29, 2019.

26.     By a Decision and Order, dated May 14, 2019, the Appellate Division denied Prince's motion for leave to appeal and vacated the Stay Order (the "Final Order"). 60G served and filed a Notice of Entry of the Final Order on May 16, 2019. See Shanahan Decl. Ex. E. Accordingly, the stay of execution of the Warrant of Eviction in place as a result of the Stay Order expired May 22, 2019 pursuant to CPLR §5519(e)(ii). [3]

27.     On March 28, 2019, non-debtor MK Sportswear, Inc. ("MK"), a 50% shareholder of Prince, moved to intervene in the Holdover Proceeding, for that proceeding to be dismissed, and for the Warrant of Eviction to be vacated. That motion was fully briefed and argued and remains *sub judice*. Notably and as demonstrated by the relevant case law, the Civil Court indicated during the argument on May 28, 2019, that it was unlikely to dismiss the holdover proceeding or vacate the Warrant of Eviction as against Prince and others based on MK's motion to intervene, because, as a matter of law, MK, if it even is actually a subtenant, is not a necessary party to that proceeding. Furthermore, the Civil Court denied oral applications by Prince and MK for stays of eviction pending the determination of MK's motion. See Shanahan Decl. ¶ 12.

---

[3] Without any basis in fact or law, Prince purported to reject 60G's Notice of Entry of the Final Order, dated May 16, 2019. The alleged basis for the rejection was that the copy of the Final Order attached to the Notice of Entry, which had been downloaded from the official website of the New York Courts, did not bear the signature of the Clerk of the Appellate Division. Notably, Prince did not cite any rule or precedent to support its purported rejection. While fully reserving its rights with respect to the initial Notice of Entry, 60G filed and served a second Notice of Entry with a copy of the Order obtained from the Appellate Division's files and bearing the signature of the Clerk on May 23, 2019, which Prince accepted without comment. See Shanahan Aff. Exs. F & G. Accordingly, the latest possible date that the Stay Order expired was May 29, 2019.

01017442--2

28.    After the Final Order was issued but before MK's motion to intervene was argued, MK improperly contacted New York City Marshal Barbarovich in an attempt to secure an informal stay of eviction, despite not having requested such as part of its motion to intervene. This attempt to derail the eviction was clearly orchestrated by Prince.

## I.    The Lease is Terminated and Prince's Assertion to the Contrary is Simply Disingenuous

29.    Prince's argument that the Lease has not been terminated is simply disingenuous and does not merit any further consideration by this Court, as the New York State courts have definitively ruled on the issue and Prince's unsuccessful appeal of the same.  As such, there is no leasehold interest for this Court to revive and 60G's motion should be granted. See Super Nova 330 LLC v Gazes, 693 F3d 138, 143 (2d Cir 2012) (holding that in order for a lease to be considered unexpired, and therefore capable of assumption, the tenant must have the power to revive the same under applicable state law).  Accordingly, the Lease cannot be assumed under 11 U.S.C. §365

30.    As a result of the conditional limitation contained therein, the Lease was terminated July 5, 2016, nearly three (3) years before Prince's bad faith bankruptcy filing.  This fact has been conclusively and finally determined by the Appellate Term Order granting 60G summary judgment of possession and finding that 60G "had valid grounds for terminating this commercial lease, based upon tenant's incurable default in obtaining insurance naming the landlord as an additional insured." Appellate Term Order, p. 5 (emphasis added).  Prince's failure to seek injunctive relief prior to the effective date of the termination of the Lease led to its termination and the Lease cannot be revived as a matter of law. See Dove Hunters Pub, Inc. v. Posner, 211 AD2d 494, 495 (1st Dept. 1995) (holding that a lease cannot be revived as a matter of law after termination; Prince Fashions, Inc. v. 60G 542 Broadway Owner, LLC, 149 AD3d

01017442--2

529 (1st Dept. 2017) (appellate relief is barred when a tenant fails to seek injunctive relief prior to the termination of a lease). With the denial of Prince's motion for leave to appeal to the Appellate Division First Department on May 14, 2016 as a result of the Final Order, Prince has exhausted its appellate rights with respect to the Appellate Term Order granting 60G summary judgment of possession and validating the termination of the Lease as of July 5, 2016.

31.    If for some reason this Court were not inclined to recognize the New York State courts' ruling that the Lease had terminated as of July 5, 2016 due to the conditional limitation, at a minimum, this Court must recognize that the Lease terminated as of the issuance of the Warrant of Eviction in December 2018, six (6) months before Prince's bad faith filing. The issuance of a warrant of eviction terminates an existing lease and annuls the landlord-tenant relationship under New York Law. See RPAPL §749(3), In re Sanshoe Worldwide Corp., 139 B.R. 585, 594 (S.D.N.Y. 1992), aff'd 993 F.2d 300 (2d Cir. 1993); Radol v. Centeno, 165 Misc2d. 448 (N.Y.Civil Ct. 1995). The filing of a voluntary Chapter 11 petition does not resurrect a lease, nor does the bankruptcy court have the power to resurrect a lease that was terminated prepetition. See e.g., Bell v. Alden Owners. Inc., 199 B.R. 451, 458 (S.D.N.Y. 1996).

## II.    The So-Called Scheme Alleged by the Debtor Has Been Rejected as Illusory by Both The Appellate Term and the First Department and Should Not Be Re-litigated in this Forum

32.    The alleged conspiracy to "steal" Prince's leasehold interest has been conclusively and explicitly rejected by the Appellate Term, holding as follows:

> Tenant's affirmative defense that Landlord acted in bad faith or engaged in other misconduct by entering into a "sham mortgage" in connection with Landlord's purchase of the subject retail condominium unit in May 2015 upon which it ultimately defaulted, was insufficient to raise an issue of fact or warrant further judicial scrutiny ... [L]andlord had valid grounds for terminating this commercial lease, based on tenant's incurable default in obtaining insurance naming the landlord as an additional insured.

12

60G 542 Broadway Owner, LLC v. Prince Fashions, Inc., 61 Misc3d 134(A), 2018 WL 5584490 at *2 (App Term 1st Dept. 2018). The Appellate Division then rejected such argument by its refusal to grant Prince leave to appeal the Appellate Term Order via the Final Order.

33. The issues regarding the so-called conspiracy have been finally adjudicated by the New York State courts, resulting in a final, non-appealable order. Accordingly, there is no basis for such issues to be re-litigated in this forum.

## III. The Pending State Court Motion to Renew the Yellowstone Application Was Designed Solely As an Attempt to Perpetuate This Bad Faith Filing and is Doomed to Fail

34. The centerpiece of Prince's opposition is two pending state court motions – one filed by Prince before the Supreme Court seeking renewal/re-argument of the denial of its 2016 Yellowstone motion, and the other is a motion filed by a shareholder of Prince, MK Sportswear seeking to vacate the judgment of possession and warrant of eviction. These two motions have many similarities. First, and as explained below, both are frivolous and have no chance of success. Second, both were obviously brought in anticipation of the filing of Prince's bankruptcy Petition in the hope that the pendency of the motions would perpetuate Prince's bad faith filing.

35. The motion to renew Prince's *Yellowstone* application is Prince's second renewal motion before the Supreme Court related to its failed *Yellowstone* application. The first renewal motion, which was predicated on Prince's "conspiracy theory" was denied via the Perry Order. This latest motion is premised on so-called "new evidence" in the form of an insurance policy that Prince procured earlier this year. As explained in 60G's May 7, 2019, Opposition to that motion, that motion is fatally defective in multiple respects. See Shanahan Decl. Ex. H.

13

36.     First, the very nature of the default at issue, *i.e.* the tenant's failure to maintain general liability insurance in accordance with its lease, is not curable as a matter of well-settled First Department law and, therefore, does not lend itself to *Yellowstone* relief.

37.     In paragraph 14 of its Opposition to the instant motion, Prince references Justice Braun's comment in the Braun Order that "I suppose it's [sic] possible that an insurance company could write a policy after the period going back in time to cover claims that could have been made and/or occurrences for the earlier period." Prince, however, conveniently neglects to mention that the Court also determined that "There is no proof that the plaintiff obtained such a policy.". See Braun Order, p. 6, lines 14-19. So assuming for argument purposes that New York law recognizes an insurance default as a "curable" default (which it does not), Justice Braun correctly recognized Prince never obtained such a policy in connection with its *Yellowstone* application (or at any point during the three years thereafter).

38.     Second, even assuming that such a default is "curable" (which it is not), the motion fails to include any explanation for Prince's failure to include this "evidence" three years ago in its original *Yellowstone* application and, by extension, any explanation of its efforts, if any, to obtain such policy in the intervening three years. See Luna v Port Auth. of New York and New Jersey, 21 AD3d 324, 326 (1st Dept. 2005) ("A motion for leave to renew must contain reasonable justification for the failure to present such facts on the prior motion"); Meissner v. Yun, 150 AD3d 455, 456 (1st Dept. 2017) (denying motion to renew that was not supported by an affidavit by someone with personal knowledge of the relevant facts and failed to provide a reasonable justification as to the party's actions).

39.     Third and most importantly, the latest renewal motion is moot as a *Yellowstone* injunction was **ONLY** available prior to termination of the Lease, which occurred in **July 2016.**

See Titleserve, Inc. v. Zenobio, 210 AD2d 311, 314 (2d Dept. 1994) ("The purpose of the *Yellowstone* injunction is to prevent termination of the lease because, once the lease expires, a court is powerless to revive it absent a showing of fraud, mutual mistake, or some other acceptable basis for the reformation of a contract which has been rendered moot by the termination of the Lease.")

40. In point of fact, the Appellate Division refused to even consider Prince's appeal of the *Yellowstone* denial on its merits due to the termination of the Lease including Prince's complete failure to seek a stay of its Lease termination from the First Department to avoid mooting its appeal. See Prince Fashions, Inc. v. 60G 542 Broadway Owner, LLC, 149 AD3d 529 (1st Dept. 2017)(holding that "Although plaintiff had the opportunity to seek injunctive relief from either Supreme Court or from this Court pursuant to CPLR 5519 between July 1, 2016 and July 5, 2016, when the cure period expired, it failed to do so. **Because by that time, plaintiff's lease was terminated**, and a holdover proceeding had been commenced, appellate relief is barred"). Prince fails to present a single authority to support its argument that obtaining a retroactive policy of insurance can cure an insurance default **after** the subject lease has been terminated 3 years earlier.

## IV. The Pending State Court Motion to Dismiss the Petition and Vacate the Judgment is Frivolous and Has No Chance of Success

41. The other motion that Prince erroneously contends breathes new life into its terminated Lease is a motion that was filed in the Holdover Proceeding by a shareholder of Prince – MK Sportswear (which is not a party to the holdover action) – seeking to intervene in that proceeding and vacate the judgment of possession.

42. MK Sportswear falsely contends that it possesses an independent leasehold right in the premises as a "subtenant" of Prince and therefore argues that it should have been joined in

15

the holdover action – and that its absence from that proceeding should somehow result in the judgment of possession being vacated **against Prince**.

43.     As explained in 60G's May 3, 2019, Opposition that motion has no chance of success, as theories on which it is premised are simply wrong. See Shanahan Decl. Ex. I. First, "it is well recognized that undertenants [assuming MK Sportswear is an undertenant which it is not] are not necessary parties to a summary proceeding." Teachers Coll. v Wolterding, 77 Misc. 2d 81, 82 (App Term 1st Dept. 1974). So as a threshold matter, there was no obligation on the part of 60G to join MK Sportswear as a respondent in the holdover proceeding (even if it were a subtenant).

44.     Second, there is certainly no authority to suggest that the non-joinder of a subtenant in a summary proceeding renders a judgment of possession void as against the prime tenant. Just the opposite is true.  In eviction proceedings, undertenants may be "proper parties", whom a landlord may choose to join as additional named parties, but "are not necessary parties whose presence is indispensable to the according of complete relief as between landlord and tenant" and that [landlord], "if so advised, may apply for joinder of the subtenants as additional named parties, so that any warrant obtained in this proceeding will be effective against them. See Triborough Bridge & Tunnel Auth v. Wimpfheimer (165 Misc.2d 584, 633 N.Y.S.2d 695 (App Term 1st Dep't 1995). The motion is so palpably frivolous that while a formal ruing has not yet been issued, at oral argument on May 28, 2019, the Court commented that there is no basis to vacate the judgment of possession as against Prince. See Shanahan Decl ¶12.

## V.     60G Has Established Cause to Dismiss the Debtor's Bankruptcy Case

45.     As set forth in the Motion, 60G has established that the Debtor's bankruptcy petition was filed in subjective bad faith and the Debtor's bankruptcy case is objectively futile, with the result that the case should be dismissed.   60G's analysis of the CTC factors

16

demonstrates that the bankruptcy case was filed in subjective bad faith: (i) there is one main asset, (ii) only four unsecured creditors listed in the Debtor's schedules, (iii) the case was filed to stop the eviction arising from a classic two party dispute, (iv) there is no asset to reorganize as the Lease has been terminated, (v) there is minimal cash flow and (vi) no evidence of employees. Prince failed to address these factors other than to indicate that (a) in addition to the Lease (which Prince incorrectly asserts is still in existence), the Debtor has personal property (although it omitted that it was listed on its schedules at less than $6,600) and (b) it has four unsecured creditors (all of which are professionals). The facts demonstrate that the case was filed in subjective bad faith.

46. Moreover, as the Lease has been terminated, Prince's petition is objectively futile as well. Contrary to Prince's contention, the warrant of eviction is not stayed. On May 14, 2019, the Appellate Division entered an order that vacated the interim stay of the execution of the Warrant of Eviction. See, Declaration of Bastien Broda, Ex. T. On May 16th and on May 23rd, 60G served Notice of Entry of Appellate Division's Final Order. Based on the May 16th service, the Appellate Division's prior order staying Appellate Term Order expired no later than May 22, 2019, which is 7 days prior to the Debtor's bankruptcy filing. As a result, the warrant of eviction was not stayed, the Lease was terminated, and there is no landlord/tenant relationship between 60G and Prince. In anything, Prince has a mere naked possessory interest which is wrongful, and it may not serve as a basis of a reorganization effort. See, In re Island Helicopters, Inc., 211 B.R. 453 (Bankr. E.D.N.Y. 1997). ("[A] debtor remaining in possession of real property that is the subject of a pre-petition warrant of eviction has a mere naked possessory interest which is wrongful, or minimal value to the estate and may not serve as the basis of a reorganization effort").

01017442--2

47.     Thus, the Court should dismiss the bankruptcy with prejudice to allow 60G to exercise it state court remedies -- evicting Prince and regain possession of the Premises. If the Court seeks retain the case, the Court should determine that the automatic stay does not apply because there is no valid Lease.

48.     Since the Lease has been terminated, the automatic stay does not apply in this case. 60G should be permitted to proceed with its eviction of Prince pursuant to the Appellate Term Order and the warrant of eviction that was issued on December 10, 2018, months prior to Prince's May 29, 2019 bankruptcy filing. See In re Neville, 118 B.R. 14 (E.D.N.Y. 1990) ("The language of Section 362(b)(10) clearly indicates that it is not necessary for a landlord to move in the Bankruptcy Court to vacate the automatic stay when the Debtor is operating under a lease of non-residential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title. The landlord may do whatever is necessary and appropriate under state law to obtain possession of such property"); In re Cohoes Indus. Terminal Inc., 62 B.R. 369, 376 (Bankr. S.D.N.Y. 1986) ("It is settled law that an unexpired lease that was terminated before the filing of a bankruptcy petition is not property of the estate within the meaning of 11 U.S.C. §541 and is neither affected by the automatic stay under 11 U.S.C. §362(a) nor may it be assumed by the debtor under 11 U.S.C. §365 .... Accordingly, the automatic stay does not operate to enjoin Associates from enforcing any rights which it may claim with respect to the property covered by the terminated lease"); In re Scarsdale Tires Inc., 47 B.R. 478 (S.D.N.Y. 1985) ("It is settled law that a lease or license that was terminated before the filing of a bankruptcy petition is neither affected by the automatic stay under 11 U.S.C. §362(a) nor may it be assumed by the debtor under 11 U.S.C. §365"); In re GSVC Restaurant Corp., 10 B.R. 300 (S.D.N.Y. 1980) (upholding eviction after termination of

01017442--2

lease and issuance of a warrant of eviction); <u>Nadine Properties, Inc. v. Heny Bergmann & Co., Inc.</u>, 153 Misc.2d 695, 701, 583 N.Y.S.2d 114, 119 (N.Y.Civil Ct. 1991) ("Accordingly, under Section 362(b) of the Bankruptcy Code ... petitioner was exempt from the automatic stay and could exercise its statutory right to recover possession of its property by executing on the warrant. It follows, obviously, that petitioner was not required to move in Bankruptcy Court to vacate a stay that did not apply").

49.     Alternatively, the Court should modify the automatic stay to allow 60G to proceed with its state court remedies.  Here, the issuance of the warrant of eviction by the state court terminated the Lease and the landlord tenant relationship between 60G and Prince. <u>See</u> <u>Bell v. Alden Owners, Inc.</u>, 199 B.R. 451, 458 (S.D.N.Y. 1996).  In May 2019, the Appellate Division (i) denied Prince's motion for leave to appeal the Appellate Term Order (which confirmed the termination of the Lease and 60G's right to regain possession of the premises) and (ii) vacated the stay pending the Appellate Division's determination of the motion for leave to appeal, which it denied.  As a result, Prince's attempt to vacate the warrant of eviction and undo the termination of the Lease were rejected on appeal. Thus, as Prince has no valid Lease, cause exists for relief from the automatic stay under section 362(d)(1).  <u>See</u> <u>Bell v. Alden Owners, Inc.</u>, 199 B. R. at 458-459 (where a prepetition warrant of eviction had issued and the debtor's attempts to obtain an order vacating the warrant and resurrecting the lease were rejected on appeal to the Appellate Term, debtor's inability to assume the lease constitutes "cause" for relief from the  automatic stay under Bankruptcy Code section 362(d)(1) to permit landlord to cancel and sell debtor's proprietary shares in cooperative apartment); <u>In re Eclair Bakery Ltd.</u>, 255 B.R. 121, 136 (Bankr. S.D.N.Y. 2000) ("[W]here state court litigation is not pending or in the cards, or where the

19

01017442--2

debtor has failed to show any basis for a belief that the state court will grant relief, the prepetition termination of the landlord-tenant relationship will at least normally provide cause for relief from the stay.")  Thus, as Prince is unable to assume the Lease, cause exists to lift the automatic stay to permit 60G to pursue its state court remedies.

## CONCLUSION

**WHEREFORE,** 60G respectfully requests that the Court enter an Order (a) dismissing the Chapter 11 petition of Prince pursuant to 11 U.S.C. §1112(b) with prejudice; or, in the alternative, (b) finding that the automatic stay does not prevent 60G from evicting Prince from the subject premises; or, in the alternative, (c) granting relief from the automatic stay pursuant to 11 U.S.C. §362(d) so that 60G can proceeding with evicting Prince, and (d) finding that the automatic stay does not apply to any non-Debtor.

**DATED:**      New York, New York
July 18, 2019

**ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300
*Attorneys for 60G 542 Broadway Owner, LLC*


By:/s/ Steven B. Eichel
**A. Mitchell Greene
Steven B. Eichel**

01017442--2