**ROSEN & ASSOCIATES, P.C.**
*Proposed Counsel to the Debtor and
 Debtor in Possession*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE FASHIONS, INC.,<br><br>                       Debtor. | Chapter 11<br><br>Case No. 19-23079-rdd |

**DEBTOR'S APPLICATION TO RETAIN ROSEN & ASSOCIATES, P.C.
AS BANKRUPTCY COUNSEL TO DEBTOR AND DEBTOR IN POSSESSION
EFFECTIVE *NUNC PRO TUNC* TO THE RETENTION DATE**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

       Prince Fashions, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), as and for its application (the "**Application**"), pursuant to 11 U.S.C. §§ 327(a), 328 and 1107(b), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), authorizing the employment and retention of Rosen & Associates, P.C. ("**Rosen & Associates**") as bankruptcy counsel to the Debtor, effective *nunc pro tunc* to the Retention Date,[1] respectfully represents as follows:

---

[1] As defined herein.

**JURISDICTION, VENUE AND STATUTORY PREDICATES**

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these proceedings is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 327(a), 328 and 1107(b), as supplemented by Rule 2014 of the Bankruptcy Rules and Rule 2014-1 of the Local Rules.

**PROCEDURAL BACKGROUND**

2. On May 29, 2019, the Debtor, acting *pro se*, filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

3. The Debtor continues to operate its business and manage its affairs as debtor and debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. To date, no trustee, examiner, or creditors' committee has been appointed.

**DEBTOR'S BACKGROUND**

4. The Debtor is a corporation, established in 1974 under the laws of the state of New York. The Debtor, as tenant, manages a parcel of commercial real estate located at 542 Broadway, New York, New York 10012 (the "**Premises**"), pursuant to a 99-year lease dated April 11, 1980 (the "**Lease**") with 542 Holding Corp. (the "**Co-Op**"), as landlord.[2]

4. In May of 2015, the Co-Op sold its interest in the Premises to 60G 542 Broadway Owner, LLC ("**60G**"), which immediately embarked on a campaign to terminate the

---

[2] The Lease was assigned to the Debtor by 542 Equity Associates pursuant to an *Assignment of Lease* executed on April 11, 1980, concomitant with the Lease.

Debtor's tenancy, in a blatant attempt to deprive the Debtor of its valuable leasehold interest at all cost. To that end, 60G issued a series of default notices starting in March of 2016 that spawned a litany of contentious, time consuming and expensive litigation in various state court proceedings.

5. To date, the Debtor has incurred over $600,000 in legal fees defending its leasehold interest against the Co-Op and 60G. Confronted with this debt burden and unable to continue to pay for legal fees, the Debtor petitioned this Court for relief on May 29, 2019 (the "**Petition Date**") in hopes of utilizing the protections of chapter 11 of the Bankruptcy Code to preserve its assets as a going concern and reorganize its operations in an orderly fashion.

6. As part of its reorganization strategy, the Debtor also intends to assume the Lease under section 365 of the Bankruptcy Code.

7. Additionally, the Debtor intends to commence an adversary proceeding in this Court to recharacterize its interest in the Lease as an ownership interest in real property pursuant to applicable law. *See e.g., Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 749 (2d Cir. 1991) (99-year term as one of two unusual aspects rendering the agreement as not a true lease).

8. Thus, the *raison d'etre* of the Debtor's chapter 11 case is to afford it the opportunity to preserve and maximize the value of its assets for the benefit of its creditors and all other parties-in-interest.[3]

## **RELIEF REQUESTED**

5. By this Application, the Debtor seeks to employ and retain Rosen & Associates as bankruptcy counsel in accordance with the terms of a retention agreement (the

---

[3] Additional factual background regarding the Debtor's current and historical business operations and the events precipitating this chapter 11 filing is set forth in the *Declaration of Doron Zabari Pursuant to Rule 1007-2* [Doc. No. 10].

"**Retention Agreement**") by and between the Debtor and Rosen & Associates dated June 7, 2019 (the "**Retention Date**"), a copy of which is attached hereto as *Exhibit B*. The Debtor notes that the Retention Agreement provides for payment of a post-petition retainer to Rosen & Associates in the amount of $50,000.

6. In support of this Application, the Debtor relies upon and incorporates by reference, the affirmation of Sanford P. Rosen (the "**Rosen Affirmation**"), the principal shareholder of Rosen & Associates, attached hereto as *Exhibit C*.

7. The Debtor has selected Rosen & Associates because the firm represented that is has considerable experience in matters of commercial reorganization and is well-qualified to represent the Debtor in this case.

8. The terms of the Retention Agreement are substantially identical to those set forth in this Application. With respect to any inconsistency between this Application and/or the Retention Agreement, the order granting this Application will govern.

## SERVICES TO BE RENDERED

9. The professional services that Rosen & Associates will render include, among other services:

   a. advising the Debtor with respect to its powers and duties as a debtor and debtor in possession in the operation of its business and management of its property;

   b. representing the Debtor before this Court, any appellate courts, and the Office of the United States Trustee on matters pertaining to its affairs as debtor in possession, including prosecuting and defending actions on the Debtor's behalf that may arise during its chapter 11 case;

c. advising and assisting the Debtor in the negotiation and preparation of a plan of reorganization with its creditors and the preparation of an accompanying disclosure statement and taking any necessary action on behalf of the Debtor to obtain confirmation of such plan;

d. preparing, on behalf of the Debtor, motions, applications, answers, orders, reports, documents, and other legal papers necessary for the administration of the Debtor's estate; and

e. performing such other legal services for the Debtor that may be appropriate and necessary.

10. To the best of the Debtor's knowledge, and except as set forth in the Rosen Affirmation, Rosen & Associates: (a) does not have any connection with the Debtor, its creditors, or any other party in interest, the Office of the United States Trustee or any person employed in the office of the same; (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code; and (c) represents no interest adverse to the Debtor as debtor and debtor in possession or its estate regarding the matters upon which Rosen & Associates is to be engaged.

## COMPENSATION

11. Subject to the Court's approval, the Debtor has agreed to pay Rosen & Associates a $50,000 retainer (the "**Retainer**") in installments, to be applied against fees for professional services rendered and charges incurred in the prosecution of the Debtor's chapter 11 case.

12. As set forth in the Rosen Affirmation, as of the date of this Application, Rosen & Associates has received payments totaling $37,500 in the aggregate on account of the Retainer.[4]

13. Subject to the approval of this Court, the Debtor has agreed to compensate Rosen & Associates at its usual hourly rates and to reimburse it for its reasonable expenses, charges, and disbursements.

14. Prior to increasing its hourly rates, Rosen & Associates shall file a supplemental affirmation and provide ten business days' notice to the Debtor, the Office of the United States Trustee and any official committee of unsecured creditors, which shall include an explanation of the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and a statement as to whether the Debtor has consented to the rate increase.

15. During the course of the Debtor's chapter 11 case, Rosen & Associates will apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred pursuant to sections 330 and 331 of the Bankruptcy Code, and in accordance with all applicable Bankruptcy Rules and Local Rules, as well as any applicable orders of the Court and the fee guidelines promulgated by the Office of the United States Trustee.

**BASIS FOR RELIEF REQUESTED**

16. Section 327(a) of the Bankruptcy Code,[5] empowers the debtor-in-possession, with the Court's approval, to employ attorneys "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

---

[4] Specifically, the initial $25,0000 was received on June 14, 2019, followed by $12,500, paid on July 7, 2019. The remaining $12,500 is payable on August 15, 2019. *See* ROSEN AFF. ¶ 11.

[5] As modified by 11 U.S.C. §1107(b).

17. Bankruptcy Code section 328(a) specifically provides that, for purposes of section 327, professionals may be retained "on any reasonable terms and conditions of employment, *including on a retainer*, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a) (emphasis added).

18. The authorization of a post-petition retainer under Bankruptcy Code section 328(a) is within the discretion of the court, which may consider a number of factors in order to determine if such retainer is appropriate. *See generally* 3 COLLIER ON BANKRUPTCY ¶ 328.02[3][b][iv] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev.).

19. The leading case, *In re Knudsen Corporation*, 84 B.R. 668 (9th Cir. BAP 1988) provides for the examination of the reasonableness of post-petition fee payments and itemizes the following factors for courts to consider:

> (i) Whether the case is an unusually large one in which an exceptionally large amount of fees accrue each month; (ii) whether the court is convinced that waiting an extended period for payment would place an undue hardship on counsel; (iii) whether the court is satisfied that counsel can respond to any subsequent court disallowance of the fees already paid; and (iv) whether the fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

*Knudson*, at 672-673.

20. Although widely followed,[6] Courts have held that to the extent the *Knudsen* criteria limits its applicability to large cases, such test contravenes section 328 of the Bankruptcy Code, which is restricted only by the reasonableness of the terms of the proposed retention. "Regardless of the size of the case, the bottom line [sic] consideration should be whether the terms

---

[6] *See, e.g., In re Bennett Funding Group, Inc.*, 213 B.R. 227, 232-233 (Bankr.N.D.N.Y.1997); *In re Niover Bagels, Inc.*, 214 B.R. 291 (Bankr.E.D.N.Y.1997): *In re W & W Protection Agency, Inc.,* 200 B.R. 615, 620-621 (Bankr.S.D.Ohio 1996)

of retention are fair; both to the professional whose retention is sought, as well as to the debtor and its creditors who must bear the expense." *In re Truong*, 259 B.R. 264, 267 (Bankr. D.N.J. 2001). *See also In re Jefferson Bus. Ctr. Assocs.,* 135 B.R. 676 (Bankr.D.Colo.1992) ("[t]he provisions for employment and payment of a debtor's counsel in Chapter 11 are flexible and practical," and "[a] determination of whether, and in what amount, a retainer should be paid is best left to the parties and the discretion of the Court.").

21. In determining whether to allow the post-petition retainer, the Court in *Jefferson* acknowledged the factors enumerated by *Knudsen*, and also considered:

> (i) the retainer's economic impact on the debtor's ongoing business operation; (ii) the retainer's economic impact on the debtor's ability to reorganize; (iii) the amount and reasonableness of the retainer; (iv) the reputation of debtor's counsel; and (v) the ability of debtor's counsel to disgorge such payments at the conclusion of the case should the Court determine that the fees paid to counsel are not justified.

*In re Jefferson Bus. Ctr. Assocs.,* 135 B.R. 676 (Bankr.D.Colo.1992).

22. The Debtor submits that under the facts and circumstances of this case, the post-petition retainer to Rosen & Associates is adequately justified.

23. First, the amount of the Retainer is reasonable and justified by Rosen & Associates' experience in chapter 11 representations and by the nature and complexity of the representation required in this case. The Retainer should not affect the Debtor's ongoing business operations and ability to reorganize.

24. Second, the Debtor is not only required to be represented by counsel in these proceedings, but will benefit from the advice and guidance of counsel and ultimately increase its prospect of a successful reorganization.

25. Finally, the proposed order provides that all fees and expenses paid to Rosen & Associates remain subject to final allowance of compensation by the Court, and thus, are subject to disgorgement.

**NOTICE**

26. The Debtor shall give notice of this Application by serving by first-class mail a copy of the Application (together with all exhibits) and the prefixed *Notice of Presentment, Pursuant,* upon: (a) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, NY 10014, Attn.: Paul Schwartzberg, Esq.; (b) the twenty (20) largest unsecured creditors of the Debtor; and (c) all other parties in interest who have requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be provided.

**WHEREFORE**, the Debtor respectfully requests this Court enter an order, substantially in the form annexed hereto as *Exhibit A,* authorizing it to employ Rosen & Associates as bankruptcy counsel on the terms set forth in this Application and the Retention Agreement, and grant it such other and further relief as is just and proper.

Dated: Yonkers, New York
       July 31, 2019

PRINCE FASHIONS, INC.

By: /s/ Doron Zabari
    Doron Zabari
President & Vice-President