**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Debtor*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | |
|---|---|
| PRINCE FASHIONS, INC., | Chapter 11 |
| | Case No. 19-23079-rdd |
| Debtor. | |

**NOTICE OF DEBTOR'S MOTION PURSUANT TO 11 U.S.C. § 1121(d)**
**EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH IT MAY FILE**
**A PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES THERETO**

   **PLEASE TAKE NOTICE** that upon the annexed motion dated September 26, 2019 (the "**Motion**")[1] of Prince Fashions, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), the undersigned will move at a hearing before the Honorable Robert D. Drain, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10601, on **October 9, 2019 at 10:00 a.m**. (**prevailing Eastern Time**), or as soon thereafter as counsel can be heard (the "**Hearing Date**"), for the entry of an order, substantially in the form annexed to the Motion as *Exhibit A*, pursuant to section 1121(d) of the Bankruptcy Code, extending the exclusive periods within which it may file a plan of reorganization and solicit acceptances thereto for 120 days, through and including January 24, 2020 and March 24, 2020, respectively, and for such other and

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed thereto in the Motion.

further relief as the Court shall deem just and proper.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall set forth the grounds with specificity, and shall be filed with this Court electronically in accordance with General Order M-399 (General Order M-399 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for this Court) by registered users of this Court's case filing system, and by all other parties in interest on a 3.5" disk or other electronic media, preferably in PDF or any Windows-based word processing format (with a hard copy delivered directly to Judge Drain's chambers) and served in accordance with General Order M-399 upon (i) Rosen & Associates, P.C., counsel to the Debtor, 747 Third Avenue, New York, NY 10017-2803, Attn.: Sanford P. Rosen, Esq.; (ii) the Office of the United States Trustee for Region 2, U.S. Federal Office Building, 201 Varick Street, New York, NY 10014, Attn.: Paul Schwartzberg, Esq.; and (iii) all parties who have requested notice and service of papers in this proceeding pursuant to Bankruptcy Rule 2002, so as to be received no later than seven (7) days prior to the Hearing Date.

Dated: New York, New York
September 26, 2019

**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Debtor*

By: _____
Paris Gyparakis
Sanford P. Rosen

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100

**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Debtor*
747 Third Avenue
New York, NY 10017-2803
(212) 223-1100
Sanford P. Rosen
Paris Gyparakis

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PRINCE FASHIONS, INC.,<br><br>         Debtor. | Chapter 11<br><br>Case No. 19-23079-rdd |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. § 1121(d)**
**EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH IT MAY FILE**
**A PLAN OF REORGANIZATION AND SOLICIT ACCEPTANCES THERETO**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

    Prince Fashions, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), through counsel, Rosen & Associates, P.C., as and for its motion (the "**Motion**"), pursuant to 11 U.S.C. § 1121(d), for the entry of an order extending the exclusive periods within which it may file a plan of reorganization and solicit acceptances thereto for 120 days, through and including January 24, 2020 and March 24, 2020, respectively, respectfully represents as follows:

**JURISDICTION, VENUE AND STATUTORY PREDICATES**

    1.  This Court has jurisdiction to consider this core proceeding pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334, and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Presca, C.J.).

2. Venue is proper before this Court pursuant to 28 U.S.C. § 1408.

3. The statutory predicates for the relief sought herein are sections 105 and 1121 of the Bankruptcy Code.

## PROCEDURAL BACKGROUND

4. On May 29, 2019 (the "**Petition Date**"), the Debtor, acting *pro se*, petitioned this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

5. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. To date, no trustee, examiner, or creditors' committee has been appointed.

## DEBTOR'S BACKGROUND[1]

7. Since 1980, the Debtor, as tenant, manages a parcel of commercial real estate located at 542 Broadway, New York, New York 10012 (the "**Premises**") pursuant to a lease dated April 11, 1980 (the "**Lease**") with 542 Holding Corp. (the "**Co-Op**"), as landlord and owner of the building in which the Premises are located.

8. In May of 2015, the Co-Op purportedly sold its interest in the Premises to 60G 542 Broadway Owner, LLC ("**60G**"), which immediately embarked on a campaign to terminate the Debtor's tenancy, in a blatant attempt to deprive the Debtor of its valuable leasehold interest at all cost.

9. To that end, 60G issued a series of default notices starting in March of 2016 that spawned a litany of contentious, time consuming and expensive litigation in various state court

---

[1] Additional factual background regarding the Debtor's current and historical business operations and the events precipitating this chapter 11 filing is set forth in the *Declaration of Doron Zabari Pursuant to Rule 1007-2* [Doc. No. 10].

proceedings. To date, the Debtor has incurred over $600,000 in legal fees defending its leasehold interest against the Co-Op and 60G.[2]

10. Confronted with the imminent risk of losing its only asset and sole source of revenue, the Debtor commenced this case to afford it the opportunity to preserve its valuable Lease for the benefit of its creditors and all other parties-in-interest.

11. On May 28, 2019, 60G moved to dismiss the Debtor's case as a bad faith filing under section 1112(b) of the Bankruptcy Code [Doc. No. 6]. After convening a hearing on the motion on July 22, 2019, the Court entered an order [Doc. No. 18] (the "**Order**") denying the motion to dismiss and granting limited relief from the automatic stay to permit the parties to continue litigating the two motions that were pending in the New York state courts with respect the Lease (collectively, the "**Pending State Court Motions**").

12. Importantly, the Order preserved all the Debtor's rights to seek and obtain a judgment from this Court recharacterizing the Lease as a fee interest in the Premises. The Debtor intends to file a complaint seeking such relief.

**RELIEF REQUESTED**

13. By this Motion, the Debtor seeks the entry of an order, substantially in the form attached hereto as *Exhibit A,* pursuant to section 1121(d) of the Bankruptcy Code, extending for 120 days the exclusive periods within which it may file a plan of reorganization and solicit acceptances thereto, without prejudice to the Debtor's right to seek additional extensions of such periods. The Debtor's exclusive period to file plan of reorganization will otherwise expire on September 26, 2019.

---

[2] A more detailed account of the factual and procedural background between the parties is set forth in the *Debtor's Response in Opposition to the Motion to Dismiss the Chapter 11 Petition* [Doc. No. 12] and the *Affidavit in Support of Debtor's Response to Motion to Dismiss the Chapter 11 Petition* [Doc. No. 13].

3

**DISCUSSION**

14. Section 1121(b) of the Bankruptcy Code provides a debtor with an initial exclusive period of 120 days after the commencement of its chapter 11 case within which to propose and file a plan of reorganization. *See* 11 U.S.C. § 1121(b).

15. If the debtor files a plan within the 120 day period, section 1121(c)(3) grants the debtor 180 days after the order for relief, or an additional 60 days, to solicit acceptances of that filed plan. Section 1121(c)(3) of the Bankruptcy Code provides as follows:

> (c) Any party in interest, including the debtor, the trustee, a creditors' committee an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if –
>
>> (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

11 U.S.C. § 1121(c)(3).

16. In addition to the 120-day and 180-day "exclusivity periods" granted by sections 1121(b) and 1121(c)(3) of the Bankruptcy Code, section 1121(d) of the Bankruptcy Code gives a court discretion to grant enlargements of the "exclusivity period" upon a showing of "cause." Section 1121(d) provides as follows:

> (d) [o]n request of a party, in interest, made within the respective periods specified in subsection (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d).

17. The exclusivity periods established by Congress were incorporated in the Bankruptcy Code to afford a full and fair opportunity for a debtor to propose a chapter 11 plan and

solicit acceptances of the plan without the deterioration and disruption of a debtor's business, typically caused by the filing of competing plans. According to the legislative history:

> Chapter 11 recognizes the need for the debtor to remain in control to some degree, or else debtors will avoid the reorganization provisions in the bill until it would be too late for them to be an effective remedy. At the same time, the bill recognizes the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company. The bill gives the debtor an exclusive right to propose a plan for 120 days. In most cases, 120 days will give the debtor adequate time to negotiate a settlement, without unduly delaying creditors. The court is given the power, though, to increase or reduce the 120-day period depending on the circumstances of the case. For example, if an unusually large company were to seek reorganization under Chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement.... Again, the bill allows the ***flexibility*** for individual cases that is unavailable today.

H.R.Rep. No. 95-595, at 232 (1977), *reprinted in* 1978 U.S .C.C.A.N. 5963, 6191 (emphasis added).

18. With the legislative intent of Congress in mind, bankruptcy courts have considered the following nine (9) factors to determine the existence of "cause" under section 1121(d) of the Bankruptcy Code:

  i. the size and complexity of the case;
  ii. the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
  iii. the existence of good faith progress toward reorganization;
  iv. the fact that the debtor is paying its bills as they become due;
  v. whether the debtor has demonstrated reasonable prospects for filing a viable plan;
  vi. whether the debtor has made progress in negotiations with its creditors;
  vii. the amount of time that has elapsed in the case;

> viii. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
> 
> ix. whether an unresolved contingency exists.

*See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *see also In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *In re Borders Grp., Inc.*, 460 B.R. at 822 (evaluating the nine factors set forth in *Adelphia* to hold that debtor established cause to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.C. 1986).

19. However, not all factors are applicable in each case and "[t]he bankruptcy court decides which factors are relevant to a particular case and how much weight to give each factor . . . ." *In re Sportsman's Link, Inc.*, No. 07-10454, 2007 WL 7023830, at *2 (Bankr. S.D. Ga. Dec. 3, 2007).

20. Thus, "[n]otwithstanding the frequently-cited nine-factor test, the court has a 'high degree of flexibility' in designing the appropriate test for each case and 'is not required to apply any particular set of factors, or number of factors, in every case." *Id.* (quoting *In re The Elder Beerman Stores Corporation*, 1997 No. C-3-97-175, 1997 WL 1774880, at *4 (S.D. Ohio June 23, 1997)). "[M]any courts have chosen to rely upon relatively few factors albeit different ones to determine whether the necessary cause exists to alter the statutory time period set forth in 11 U.S.C. § 1121 . . . . Furthermore, it appears that the choice of pertinent factors depends largely upon the factual nature of the case before the court." *In re The Elder Beerman Stores Corporation*, 1997 WL 1774880, at *4. *See also In re R & G Properties, Inc.*, No. 08-10876, 2009 WL 269696, at *1 (Bankr. D. Vt. Jan. 28, 2009).

21. Additionally, courts recognize that "the case law factors might not, in every case, by themselves be determinative." *In re Borders Group, Inc.*, 460 B.R. 818, 827 (Bankr. S.D.N.Y. 2011) (*citing In re Adelphia Communications Corp.*, 352 B.R. 578, 590). Often, 'the

primary consideration should be whether or not doing so would facilitate moving the case forward. And that is a practical call that can override a mere toting up of the factors." *Id.* (*citing In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997)).

22. Here, as discussed below, almost all of the factors weigh in favor of an extension of the Debtor's exclusivity periods under section 1121(d) of the Bankruptcy Code. Only the sixth factor (progress in negotiations with creditors) does not directly support the extension sought.

23. The first factor, "the size and complexity of the case," weighs in favor of granting the Debtor's request. The Debtor's case, measured in terms of asset value, is not large; however, the question of whether the Lease may be recharacterized as a fee interest in the Premises is a complex question, the answer to which will determine the direction of this case.

24. With respect to the second factor, "how long the chapter 11 case has been pending and how many extensions of the exclusivity period the Debtor has had" is the relevant inquiry and, here, weighs in favor of granting the Debtor's request. *See In re R & G Properties, Inc.,* 2009 WL 269696, at *3. The Debtor has been in chapter 11 for just four (4) months and this is its first request for an extension of the exclusivity periods.

25. With respect to the third factor, "good faith progress toward reorganization" exists where a debtor is working to resolve the issues facing its estate. *See In re The Company Store, Inc.*, 1992 WL 12003985, at *2 (debtor was current with monthly operating reports, had provided secured creditors with requisite financial reports, and was actively exploring several alternative forms of reorganization); *In re Service Merchandise, Inc.*, 256 B.R. 744, 751 (debtor had met and exceeded every benchmark established in its post-petition business plan); *In re Friedman's, Inc.*, 336 B.R. 884, 888 (debtors were working to resolve issues with vendors,

landlords and other creditors, had obtained a post-petition financing facility, had implemented store closing program, and had obtained extension of time to assume or reject leases).

26. Here, the Debtor is actively litigating the Pending State Court Motions and it will shortly commence an adversary proceeding against the 60G to obtain a judgment from this Court recharacterizing the Lease as a fee interest in the Premises. The Debtor intends to file and confirm a plan of reorganization premised upon such recharacterization that the Debtor expects will provide the liquidity necessary to fund payment to creditors. The Debtor submits that it satisfies the third factor.

27. The Debtor also easily satisfies the fourth factor, as it is paying its bills as they come due, is current with respect to his monthly operating reports, and is in full compliance with all requisite financial reporting. There is "no risk of financial deterioration to creditors . . ." as a result of granting the requested extension. *In re R & G Properties, Inc.*, 2009 WL 269696, at *2.

28. Regarding the fifth factor: "whether the debtor has demonstrated reasonable prospects for filing a viable plan," while the Debtor is actively litigating the Pending State Court Motions and will shortly commence an adversary proceeding against 60G to recharacterize the Lease as a fee interest in the Premises, the Debtor submits that its likelihood of success, particularly with respect to the adversary proceeding, demonstrates that it has a reasonable prospect of confirming a viable plan of liquidation.

29. The Debtor also satisfies the seventh factor, "the amount of time that has elapsed in the case." As discussed above, this case has been pending for only four (4) months; hardly a long period of time in view of the status of the litigations discussed above.

30. The eighth factor, "whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands," also weighs in favor of granting the Debtor's request. The Debtor is seeking no strategic advantage by requesting the extension. *See In re Lake in the Woods*, 10 B.R. 338, 345-46 (D. Mich.1981); *In re Texaco, Inc.*, 76 B.R. 322, 345 (Bankr. S.D.N.Y.1987). Rather, it is seeking to maintain the status quo while it continues to litigate the issues that will determine the status of its interest in the Premises. Where, as here, "the extension request is another procedural step to achieve the debtor's overall timeline for successful emergence from chapter 11," the extension is not for an improper purpose. *See In re Service Merchandise, Inc.*, 256 B.R. 744, 754.

31. Finally, the ninth factor, "whether an unresolved contingency exists," also weighs in favor of the extension sought. Here, the "unresolved contingency" is a determination as to whether the Debtor has an ownership interest in the Premises. Such determination will be made in the course of the adversary proceeding seeking to recharacterize the Lease as a fee interest. A judgment in the Debtor's favor will certainly enable the Debtor to confirm and consummate a plan of reorganization.

32. Accordingly, a review of the relevant factors demonstrates that the relief sought is warranted and necessary to allow the Debtor to conclude all litigation with respect to its interest in the Premises and consummate a viable plan of reorganization to emerge from chapter 11.

## **CONCLUSION**

33. In view of the foregoing, the Debtor respectfully submits that it has met its burden to establish "cause" under section 1121(d) of the Bankruptcy Code.

## NOTICE

34. The Debtor shall give notice of this Motion by serving by first-class mail copy of the Motion and the prefixed *Notice of Motion* upon: (a) the Office of the United States Trustee for Region 2; (b) the Debtor's 20 largest unsecured creditors; and (c) and all those who have requested notice and service of papers in this case pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

35. No prior request for the relief sought in this Motion has been made to this or any other Court.

**WHEREFORE**, the Debtor respectfully requests that this Court: (i) enter an order, substantially in the form annexed hereto as *Exhibit A*; and (ii) granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      September 26, 2019

**ROSEN & ASSOCIATES, P.C.**
*Counsel to the Debtor and Debtor
  in Possession*

By:  /s/ Sanford P. Rosen
      Sanford P. Rosen
      Paris Gyparakis

747 Third Avenue
New York, NY 10017-2803
(212) 223-1100